In the Matter of the Guardianship of Mike Smythe and Susan Smythe, Minors.
Alva M. Phillips and Ruth Phillips, Petitioners-Appellees, v. Mike Smythe and Susan Smythe, Defendants, Barbara Hazelip, et al., Defendants-Appellants.

Gen. No. 65-13.

Fifth District.

December 13, 1965.

![black bar]

David L. Stanley, of Carmi, for appellants.

Kern and Pearce, of Carmi, for appellees.

MORAN, J.
This is an appeal from a judgment of the Circuit Court of White County appointing Alva Phillips guardian of the estates and persons of Mike and Susan Smythe.

On July 16, 1964, Alva M. Phillips and Ruth Phillips filed a petition in the Probate Division of the Circuit Court of White County, Illinois asking that Alva Phillips be appointed guardian of the estate and person of Mike Smythe, born May 13, 1958, and of his sister, Susan Smythe, born January 10, 1957. Foster L. Smythe, through his attorney, appeared in the Circuit Court of White County in opposition to the petition. The Circuit Court of White County entered the following order:

ORDER APPOINTING GUARDIAN

And now come Alva M. Phillips and Ruth Phillips, husband and wife, and file and present their petition for appointment of Guardian, and tender bond in the penal amount of $500.00. And the Court, from the verified petition and the evidence presented finds:

Mike Smythe and Susan Smythe are both minors; that said minors resided with their parents in Paducah, Kentucky; that both parents of said minors were killed in an auto accident in Illinois, and that said minors have been hospitalized at Crawford Memorial Hospital, at Robinson, Crawford County, Illinois as a result of injuries received in the accident; that the maternal grandparents of said minors

reside at Enfield, White County, Illinois and also the paternal Grandmother; that paternal Grandfather of said minors is a resident of Indiana, at LaPorte, where he lives with his second wife, the step-grandmother of said minors. That the majority of the nearest kin of said minors are residents of White County, Illinois. That there may be a claim for wrongful death, as well as insurance benefits arising from the employment of the Father of said minors, all of which would be assets of the estates of said minors; and that there is likely a small amount of personal property coming to said minors from their deceased parents; and that a guardian of the estates and persons of said minors should be appointed, since each is an infant of tender years; and that the petitioners herein are fit and proper persons to assume the responsibilities of such guardianship.

It is therefore ordered that letters of Guardianship of the estates and persons of said minors, Mike Smythe and Susan Smythe, issue herein to Alva Phillips, a resident of White County, Illinois, whose bond herein has been approved; all in accordance with the prayer of the petition.

ENTER: July 16, 1964.

/s/ Charles E. Jones
Judge

On July 21, 1964, Barbara Hazelip, paternal grandmother, Foster L. Smythe, paternal grandfather, and Natalie D. Willis, paternal aunt of said minors, filed a motion to vacate the foregoing order on the sole ground

434

that the court was without jurisdiction to enter it. An affidavit and counteraffidavit were filed by the respective parties.

The facts disclosed that Foster A. Smythe and Aldean Phillips were married on April 21, 1956. Two children were born to their marriage, namely Mike Smythe (whose full, correct name is Dann Michael Smythe) born on May 13, 1958 and Susan Smythe who was born on January 10, 1957. Prior to her marriage to Foster Smythe, the said Aldean Phillips Smythe resided in White County, Illinois with her parents. Foster and Aldean first lived in Evansville, Indiana after their marriage, where their two children were born. They moved to Paducah, Kentucky about July of 1961 and resided there until June, 1964, when they moved to Ledbetter, Kentucky where they resided until the time of their deaths.

On July 12, 1964, Foster and Aldean and their two children were involved in a two-car collision in Crawford County, Illinois. Foster died the same day and Aldean died two days later. The children were hospitalized in Crawford County, Illinois. On July 16, 1964, Alva Phillips and Ruth Phillips filed a guardianship petition in the Circuit Court of White County, Illinois and Alva Phillips was appointed guardian of the person and the estate of both children on the same date, over the objection of Foster L. Smythe, who was represented by an attorney.

On July 16, 1964, Mike Smythe was removed from the Crawford County Memorial Hospital and taken to Indiana. The next day, Foster L. Smythe, with the full knowledge of the guardianship order of the Circuit Court of White County, removed Susan Smythe from the Crawford County Memorial Hospital against the advice of the attending physician and over the protest of the hospital administration, and took her to Indiana.

The nearest relatives of the minor children, Mike Smythe and Susan Smythe, are their grandparents:

Alva Phillips and Ruth Phillips on the mother's side, Foster L Smythe and Barbara Smythe Hazelip on the father's side. All of the grandparents except Foster reside and are domiciled in White County, Illinois and did so live and reside at the time of the issuance of letters of guardianship in this cause. Both parents of said minors are buried at Enfield, White County, Illinois.

Appellants contend that the courts of this state have no jurisdiction of minors in guardianship proceedings other than that given them by statute and that the only statutes giving them jurisdiction are section 133 of the Illinois Probate Act, Smith Hurd Ill Ann Stats, chap 3, and section 2001 and section 2006 of the Illinois Family Court Act, Smith Hurd Ill Ann Stats, chap 23.

> The Illinois Probate Act as amended in 1963, reads as follows:

> On the filing of a verified petition by a reputable citizen of this State or on its own motion the Circuit Court may appoint a guardian for a minor wherever it appears necessary or convenient. If the minor is a resident of this State, the guardian of his estate and person shall be appointed by the Circuit Court of the county in which he resides. If the minor is not a resident of this State, the guardian of his estate shall be appointed by the Circuit Court of the county in which he owns real estate, or if he owns no real estate in this State, by the Circuit Court of the county in which he owns personal estate.

Appellants argue that the above statute does not give the courts of this state jurisdiction to appoint a guardian of the estate or of the person for a nonresident minor who has no estate in Illinois; that since both children are nonresident minors without property, the Circuit Court of White County had no jurisdiction to appoint a guardian for the Smythe children.

436

■ Appellants concede that the courts of Illinois have jurisdiction over nonresident minors who have no estate in Illinois and who are in need of protection. However, they claim that this jurisdiction can be exercised only through the Family Court Act, Smith Hurd Illinois Stats, chap 23, sec 2001 and sec 2006, wherein jurisdiction is conferred upon the courts of the several counties to establish guardianships for minors found in their respective counties who are in need of the protection and assistance of the courts. They contend the Circuit Court of White County had no jurisdiction under this act because the Smythe children were not physically in White County, Illinois at the time of the appointment and in any event, the petitioners herein did not proceed under the Family Court Act.

Appellees contend that the Smythe children acquired a domicile in White County, Illinois after the death of their parents because three of the four living grandparents of the children reside in White County; that the Circuit Court of White County had jurisdiction to appoint a guardian of the estate of the Smythe children because they had certain items of personal property located in White County which had belonged to their parents; that the Circuit Court of White County had the power to appoint a guardian for the estate and person of the Smythe children because they were without parents at the time of the appointment and were within the territorial boundaries of Illinois.

Shine v. Wabash Ry. Co., 8 Ill App2d 521, 132 NE2d 41 (1956) and other authorities cited by appellant hold that the probate courts of this state obtained their jurisdiction to appoint guardians for minors from section 133 of the Illinois Probate Act and that therefore the requirements of this section were jurisdictional as far as the probate courts were concerned. In our opinion these authorities conflict with the holding of our Supreme

Court in the case of In re Estate of Willavize, 21 Ill2d 40, 171 NE2d 21 (1961), which holds that section 54 of the Probate Act must be considered to be a venue provision rather than one of jurisdiction. In so holding, the Supreme Court stated at page 43:

... The existence of this jurisdiction in the county or probate courts is based upon the constitutional provisions found in sections 18 and 20 of article VI of the constitution of 1870, and on the statutory grant of jurisdiction found in the acts relating to county and probate courts. (Ill Rev Stat 1959, chap 37, pars 175 and 303.) Thus, jurisdiction of probate matters is established not by the Probate Act but, rather, by other constitutional or statutory provisions.

Although a different section of the Probate Act is involved here, it is apparent from a reading of the Willavize case that our Supreme Court would apply the same reasoning to section 133 of the Probate Act if ever called upon to decide whether this section was one of jurisdiction or one of venue.

However, assuming that Shine and the other authorities cited by plaintiff properly held that the probate courts of this state had no jurisdiction to appoint guardians for minors other than that given them by the Illinois Probate Act, they are not authority for holding that the circuit courts of this state are likewise without this power because of this statute. The probate courts of this state were abolished by the new judicial article which became effective January 1, 1964. The order appointing Alva M. Phillips guardian of the persons and of the estates of Mike and Susan Smythe was entered on July 16, 1964 by the Circuit Court of White County. The contention here is that the Circuit Court of White County had no jurisdiction to make this appointment. Therefore, we must consider not what power the probate

courts had prior to the passage of the judicial article, but only what power the circuit courts of this state now have to appoint guardians for the estates and persons of minors.

■ If the circuit courts of this state exercise only a statutory jurisdiction to appoint guardians for minors found in its jurisdiction, then we must look to the statutes permitting this proceeding because such jurisdiction is derived only from the statute creating the action. (Sweitzer v. Industrial Commission, 394 Ill 141, 68 NE2d 290.) However, if the power of the court to act exists independently of the statute, the interpretation of the statute is a mere abstract question not necessary for the determination of the issue presented.

The case of The People ex rel. Ryan v. Sempek, 12 Ill2d 581, 147 NE2d 295, held that the jurisdiction of chancery courts to appoint suitable persons to act as guardian when the children do not have proper care is independent of the Family Court Act, saying at page 584:

> The rule is well settled that if the power to act in the particular case exists independently of the statute, the validity of the latter is a mere abstract question not necessary for determination of the issue presented.

Therefore, if the circuit courts of this state have inherent power to appoint guardians of the estates and persons of minors, independent of statute, a discussion of whether the statute purporting to give this jurisdiction to the courts had been complied with is irrelevant to the question of whether or not the circuit courts of this state have such jurisdiction. In Thomas v. Thomas, 250 Ill 354, 95 NE 345, the court said at pages 364, 365:

> There is another power which courts of equity have concerning infants and their property, and that is the appointment of guardians. (Hohenadel v. Steele.

439

237 Ill 229.) The source of this jurisdiction is quite uncertain. Whether the power was originally a mere usurpation, or was legally delegated to the chancellor by the crown as parens patriae, or grew out of the practice of appointing guardians ad litem, the jurisdiction exists here by inheritance from the English courts of chancery and not because equitable rights or titles are involved. Like the power of any other court to appoint a guardian, that jurisdiction may be exercised upon a proper petition or application for the appointment of a guardian.

The Supreme Court approved this language in People ex rel. Houghland v. Leonard, 415 Ill 135, 112 NE2d 695, saying at 138, 139:

. . . Historically, courts of chancery, representing the government, have exercised jurisdiction over the person and property of infants to insure that they were not abused, defrauded or neglected. (Cases cited.) As has been pointed out, one method by which this general equity power over infants was exercised has been the appointment of guardians.

In the Matter of the Petition of Alexander Ferrier, 103 Ill 367, the court said at page 371:

The power conferred under the act in question upon the county court is but of the same character of the jurisdiction exercised by the court of chancery over the persons and property of infants, having foundation in the prerogative of the Crown, flowing from its general power and duty, as parens patriae, to protect those who have no other lawful protector.

In Ames v. Ames, 151 Ill 280, 37 NE 890, the court said at page 285:

Courts of equity have plenary jurisdiction over the persons and estates of infants, and will in the

exercise of that jurisdiction, cause to be done whatever may be necessary to preserve their estates and protect their interest. (Cases cited.)

In discussing the jurisdiction of probate courts, Howell v. Moores, 127 Ill 67, 19 NE 863, held that under the constitution circuit courts had original jurisdiction in all cases at law and in equity, therefore the jurisdiction conferred upon the county or probate courts was concurrent only with that previously existing in the circuit courts in matters of trust; that under the constitution this equity jurisdiction could not be taken from the courts of equity by the legislature. The Howell case was quoted with approval in Chapman v. American Surety Co., 261 Ill 594, 104 NE 247, when the court held that in addition to having a paramount jurisdiction in matters of the administration and settlement of estates, courts of equity have also "similar plenary jurisdiction over the persons and estates of infants, and in exercising that jurisdiction may cause to be done whatever may be necessary to preserve their estates and protect their interests."

■ From the foregoing authorities we find that the circuit courts of this state have an inherent plenary jurisdiction to appoint guardians of minors independent of any authority given to the courts by the legislature under either or both of the aforementioned statutes.

We distinguish this case from People ex rel. Pauling v. Misevic, 32 Ill2d 11, 203 NE2d 393, People v. Nunes, 58 Ill App2d 55, 207 NE2d 143, and Cowdery v. Northern Trust Co., 321 Ill App 243, 53 NE2d 43, which hold that the circuit courts of this state have no inherent jurisdiction over the estates or persons of insane persons and the state, as parens patriae, exercises the same control over insane persons as was formerly exercised in England by its king, and therefore this power is exercised by the courts only through legislative enactments.

■ Under the Illinois Constitution of 1818 and the statutes enacted pursuant thereto, the circuit courts of

441

this state possessed original jurisdiction in all matters of chancery as the same had previously been exercised and understood in the courts of this country and England and they possessed no other or further powers or jurisdiction. (Dodge, Conservator v. Cole, et al., 97 Ill 338.) Under section 12 of article VI of the Constitution of 1870, circuit courts were vested with original jurisdiction of all cases of law and equity and therefore were courts of general common law jurisdiction.

The courts of England never had jurisdiction over insane persons or their property. There was no proceeding under the laws of England by which the courts could exercise such jurisdiction. This power belonged to the king under the doctrine of parens patriae and was exercised by him through the lord chancellor. Although this jurisdiction was exercised by the lord chancellor in the high court of chancery, yet it was not exercised by him in his character of chancellor or by virtue of the general powers pertaining to that court, but on the contrary, by virtue of a separate and distinct commission under a sign manual from the crown. (The king's signature on a royal grant or charter placed at the top of the document.) (People v. Nunes, 58 Ill App2d 55, 207 NE2d 143; Dodge, Conservator v. Cole, et al., 97 Ill 338; Maddock's Chancery, Vol II, page 723, published 1827.)

█ On the other hand, courts of equity from time immemorial have upon proper application, assumed jurisdiction over the persons and property of infants. (Dodge, Conservator v. Cole, supra.) In Maddock's, A Treatise on the Principles and Practice of the High Court of Chancery, published in 1827, Volume I at page 331, the author says:

> The Court of Chancery, therefore, it seems, has the exclusive care over Infants: and though by Act of Parliament the Court of Wards had a particular power over Infants and Lunatics, yet in every other respect the Law as to Infants continued as before;

442

and when the Court of Wards and Liveries was dissolved by the 12 Car 2 c 24, the power of the Court over Infants resulted back to them again in its original extent.

 Since under our constitution the circuit courts of this state inherit their general powers from the common law of England and since the English courts had no power over the estates or the persons of lunatics and idiots, therefore the circuit courts of this state have no power over their persons or estates without a statutory enactment, because this being a prerogative exclusively belonging to the crown of England, our legislature and not our courts obtained this power upon the enactment of our constitution. However, since the circuit courts of this state were granted jurisdiction "in all cases at law or equity" under our prior constitution and since the English courts of chancery had jurisdiction over the persons and the estates of infants, therefore the circuit courts of this state were granted a plenary jurisdiction over the estates and persons of infants by the adoption of our constitution.

Since the Circuit Court of White County had jurisdiction of the subject matter, its order must be upheld if it also had jurisdiction of the persons.

The Supreme Court of the United States has never placed constitutional limitations upon the power of the state court to appoint a guardian for minor children. Where there is not outstanding judicial award of custody by a foreign court, the courts are nearly unanimous in holding that even though the children may be domiciled without the state, the power in the court exists to make an award of custody of children present in the state in furtherance of the welfare of the children. (See authorities collected in 4 ALR2d, page 16.)

 At the time the Circuit Court of White County entered its order appointing Alva Phillips, maternal grandfather of Mike Smythe and Susan Smythe, guardian of

their persons and estates, the children were in this state. Therefore, the courts of Illinois had the power to award custody of these children even though the children may not have been domiciled in or were legal residents of Illinois.

In the People v. Wingate, 376 Ill 244, 33 NE2d 467, our Supreme Court said at page 250:

> The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the child. It arises out of the power that every sovereignty possesses as parens patriae to every child within its borders to determine its status and the custody that will best meet its needs and wants.

> (Woodworth v. Spring, 4 Allen, 231; White v. White, 77 NH 26, 86 A 353; Hanrahan v. Sears, 72 id. 71, 54 A 702.)

The cases cited in the above language from People v. Wingate hold that a state court has the power to determine the status and custody of children within its borders without regard to the domicile or residence of said children. The basic principle in custody cases is that the state seeking to exercise such jurisdiction must be so closely connected with the welfare of the child that it is in furtherance of his interest that his custody be determined in that state. (In re Fore, 168 Ohio 363, 155 NE2d 194.)

The Smythe children were orphans in need of the protection of the courts of this state. Three of their four grandparents resided in White County, Illinois. Their mother was born in White County and resided there until she met and married their father. The bodies of their parents are interred in the soil of White County. Since White County, Illinois is much more closely connected with the welfare of the Smythe children than any other place disclosed in this record, it would be the most

444

logical place for the circuit court to exercise jurisdiction over them. However, assuming that this were not true and that jurisdiction should be exercised in some other county, this would not present a jurisdictional problem, but rather a problem of venue. (In re Estate of Willavize, supra.)

The need for court protection for orphan children found in the state of Illinois can best be illustrated by what actually happened to Mike and Susan Smythe while they were hospitalized in the Crawford County Memorial Hospital because of their injuries. On July 16, 1964, the very day that Alva Phillips was appointed guardian of the persons and the estates of these children, Mike Smythe was forcibly taken from the hospital and from the state of Illinois. On the next day the appellant, Foster L. Smythe, paternal grandfather of these children removed Susan from the Crawford County Memorial Hospital against the advice of her attending physician, against the advice of the hospital administration and with full knowledge of the court order awarding custody of these children to Alva M. Phillips. In doing this he signed an acknowledgment that he had been informed of the risk involved and signed a release, releasing the attending physician and the hospital from any ill effects which may have resulted from her discharge.

We hold that the Circuit Court of White County had jurisdiction of the subject matter and of the persons of Dann Michael Smythe, a minor, Susan Smythe, a minor, of Foster L. Smythe and all other parties to the proceedings when it entered its order appointing Alva Phillips guardian of the persons and of the estates of Dann Michael Smythe, a minor, and Susan Smythe, a minor. Since the considerations that we have pointed out in deciding this case go to the jurisdiction and not to the merits of this controversy, nothing that we have said in this opinion will preclude the appellant from obtaining a hearing on the merits of this case before the Circuit

445

Court of White County to determine what is for the best interests of the children. The judgment of the Circuit Court of White County is therefore affirmed.

Judgment affirmed.

EBERSPACHER, P. J. and GOLDENHERSH, J., concur.