*In re* ESTATE OF MARJORIE E. ROY, a Disabled Person (Deborah Dodt, Petitioner-Appellee, v. Luther Roy, Respondent-Appellant.)

Third District    No. 3—93—0657

Opinion filed July 19, 1994.

Milton Yondorf, of University Park, for appellant.

Dennis J. Baron, of Kankakee, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

The petitioner, Deborah Dodt, filed a petition to adjudicate Marjorie Roy a disabled person and appoint Marjorie's daughter, Lois Kemp, to be guardian of her estate. Marjorie subsequently filed a petition to adjudicate disability and appoint her husband, Luther Roy, as guardian. Marjorie's petition was dismissed by the trial court pursuant to section 11a—5(a) of the Probate Act of 1975 (755 ILCS 5/11a—5(a) (West 1992)) (the Act), which precludes convicted felons from acting as guardians. After a hearing, the court appointed Lois Kemp as Marjorie's guardian. Luther appeals.[1]

Luther Roy was convicted of two armed robbery charges in 1957. Luther and Marjorie have been married for 43 years. Marjorie had a daughter, Lois Kemp, from a previous marriage. Since 1985, Luther cared for Marjorie while her health increasingly deteriorated. In 1992, he placed Marjorie in a nursing home. In February 1993, the trial court granted a petition filed by Deborah Dodt, an employee of Catholic Charities, to have a temporary guardian appointed for Marjorie. Thereafter, Marjorie sought to vacate that order and filed a petition to appoint her husband as guardian. Therein, she alleged that Luther was the only person thoroughly familiar with her condition and the only person who fully knew her needs and desires. Dodt subsequently filed a motion to strike Marjorie's petition based on Luther's felony record. The court granted the motion and dismissed the petition. The next day, a hearing was held on Dodt's petition to have Kemp appointed as guardian. Luther was not allowed to present any evidence of his qualifications to act as guardian. Following the hearing, the trial court appointed Kemp as guardian of the person and estate of Marjorie Roy.

The statute at issue here provides:

"Who may act as guardian. (a) A person who has attained the age of 18 years, is a resident of the United States, is not of unsound mind, is not an adjudged disabled person as defined in this Act,

---

[1] Luther may appeal in his capacity as the next friend of the ward. See 755 ILCS 5/11a—18(c) (West 1992); *In re Estate of Strong* (1990), 194 Ill. App. 3d 219, 550 N.E.2d 1201; *People ex rel. Dombroski v. O'Connell* (1941), 378 Ill. 346, 38 N.E.2d 40.

*and has not been convicted of a felony,* and who the court finds is capable of providing an active and suitable program of guardianship for the disabled person is qualified to act as guardian of the person and, if he is a resident of this State, guardian of the estate of a disabled person." (Emphasis added.) 755 ILCS 5/11a—5(a) (West 1992).

On appeal, Luther first argues that section 11a—5(a), which prohibits anyone convicted of a felony from being appointed a guardian of a disabled person, violates the bill of attainder clause of article I, section 10, of the United States Constitution. He contends in essence that the statute condemns him and proscribes a penalty without a judicial trial. Luther relies primarily on *In re Garland* (1867), 71 U.S. (4 Wall.) 333, 18 L. Ed. 366, and *United States v. Brown* (1965), 381 U.S. 437, 14 L. Ed. 2d 484, 85 S. Ct. 1707, in support of his position.

In *Garland,* an act of Congress required all attorneys who desired to appear in Federal court to take an oath stating that they did not fight against the Union in the Civil War. Garland could not take the oath in good faith. The court struck down the provision as a bill of attainder on the ground that it was a legislative act inflicting punishment on a specific group. The Supreme Court took the same approach in *Cummings v. Missouri* (1867), 71 U.S. (4 Wall.) 277, 18 L. Ed. 356, when it struck down a similar loyalty oath. There, the court noted:

"The deprivation of any rights, civil or political, previously enjoyed, may be punishment; the circumstances attending and the causes of the deprivation determining this fact. Disqualification from office may be punishment, as in cases of conviction upon impeachment. Disqualification from the pursuits of a lawful avocation, or from positions of trust, or from the privilege of appearing in the courts, or acting as an executor, administrator, or guardian, may also, and often has been, imposed as punishment." *Cummings,* 71 U.S. (4 Wall.) at 320, 18 L. Ed. at 362.

The broad language of *Cummings* and *Garland,* however, was subsequently qualified by the United States Supreme Court in *Hawker v. New York* (1898), 170 U.S. 189, 42 L. Ed. 1002, 18 S. Ct. 573. There, Hawker performed an abortion and was sentenced to 10 years in prison. In the meantime, New York passed a law making it a criminal offense for anyone to practice medicine who had been convicted of a felony. Upon Hawker's release from prison, he began practicing medicine and was charged with a violation of the statute and subsequently convicted and fined $250. The Supreme Court upheld the law and distinguished *Garland,* noting that *Garland* stood for the proposition that one who has been admitted to practice the profession

of law cannot be deprived of the right to continue in the exercise of that profession by the exaction of an oath as to past conduct, respecting matters which have no connection with the profession. The *Hawker* Court went on to note that the commission of a crime has some relation to character, and a doctor's character is important because he must be trusted to safely administer medical treatment. Accordingly, the court found that the legislation in question was not a mere imposition of an additional penalty but was instead a prescription for the qualifications of the duties to be discharged and naming what is appropriate evidence of such qualifications.

In *United States v. Brown*, an act of Congress made it a crime for a Communist party member to serve as an officer of a labor union. The Court struck down the law, finding that it was a bill of attainder by focusing upon easily identifiable members of a class—members of the Communist party—and imposing on them the sanction of mandatory forfeiture of a job or office, long deemed to be punishment within the contemplation of the bill of attainder clause.

In *Nixon v. Administrator of General Services* (1977), 433 U.S. 425, 53 L. Ed. 2d 867, 97 S. Ct. 2777, the Court again had occasion to address an issue dealing with the bill of attainder clause. There, former President Richard Nixon entered into an agreement with the Administrator to have the voluminous presidential papers and materials returned to him. When it was made public, Congress passed a law abrogating the agreement so that the papers having historical value could be preserved. In holding that the law was not a bill of attainder, the Court conducted a lengthy analysis of the clause.

Basically, the *Nixon* Court noted that a three-part analysis must be undertaken to determine if a law violates the clause. First, the court must determine whether the law imposes punishment traditionally prohibited by the bill of attainder clause. If it is a legislative enactment which bars certain groups from participation in specified employments or vocations, and is a mode of punishment commonly used to legislate against those branded as disloyal, then it might violate the Constitution. Secondly, the court must apply a functional test, analyzing whether the law challenged, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes. The third part of the test is a motivational one: inquiring whether the legislative record evinces an intent to punish.

●1 Applying the analysis enunciated in *Nixon* to the case at bar, we find that the enactment in question was not a bill of attainder. The first and third factors enunciated in *Nixon* are clearly not applicable here. However, the second factor set forth in *Nixon* is

crucial to our analysis. In discussing that factor, the *Nixon* Court cited *Hawker* and noted that *Brown* left unchanged the requirement that one who complains of being attainted must establish that the legislature's action constituted punishment and not merely the legitimate regulation of conduct. The Court further noted that the law must be an act of nonpunitive legislative policymaking with readily apparent justifications. We find that section 11a—5(a) of the Act can be said to further nonpunitive legislative purposes. One who has been adjudged to have committed a felony could be said to have a flawed character and thought to be untrustworthy. The law promotes a legitimate interest of protecting vulnerable members of society— mentally disabled persons—from others who have shown a propensity to crime. We do not believe that the motivation of the General Assembly in enacting this provision was to further punish felons, but rather we believe the intent was to protect the vulnerable. This is in accord with the paramount concern surrounding the selection of a guardian which is the best interest and well-being of the incompetent. (See *In re Estate of Vicic* (1979), 79 Ill. App. 3d 383, 398 N.E.2d 420.) Therefore, we find that under the *Nixon* analysis the bill of attainder clause was not violated.

Luther next argues that the statute violates the *ex post facto* clause of the Federal Constitution.

●2 We disagree. The Illinois Supreme Court defined *ex post facto* legislation as that which:

> "(1) makes criminal and punishable an act innocent when done; (2) aggravates a crime, or makes it greater than it was when committed; (3) increases the punishment for a crime and applies the increase to crimes committed before the enactment of the law; and (4) alters legal rules of evidence so that testimony insufficient to convict of the offense when committed would be sufficient as to that particular offense and the accused person." (*Stein v. Howlett* (1972), 52 Ill. 2d 570, 584, 289 N.E.2d 409, citing *Calder v. Bull* (1798), 3 U.S. 386, 1 L. Ed. 648.)

The above-quoted principles apply only to criminal laws. (*Stein v. Howlett* (1972), 52 Ill. 2d 570, 289 N.E.2d 409; *Jewell v. Carpentier* (1961), 22 Ill. 2d 445, 176 N.E.2d 767.) As we have already discussed, section 11a—5(a) is not penal in nature, but is instead designed to protect the mentally disabled. (See also 755 ILCS 5/11a—3(b), 11a—6 (West 1992) (guardianship should be utilized only as necessary to promote the well-being of disabled person and to protect from neglect, exploitation and abuse).) Thus, we find no *ex post facto* violation.

Luther next argues that the applicable statutory provisions are inconsistent and lead to an absurd result in this case. He contends

that because section 11a—12(d) allows a disabled person to bring a petition naming a guardian with due consideration given to that choice (755 ILCS 5/11a—12(d) (West 1992)), this is somehow inconsistent with section 11a—5(a) (755 ILCS 5/11a—5(a) (West 1992)), which lists the minimum qualifications of a guardian.

●3 We find no merit to Luther's argument. The statutory framework is clear and unambiguous. It clearly provides that a disabled person is allowed to bring a petition naming a guardian (755 ILCS 5/11a—3(a) (West 1992)) but that choice is subject to the statutory criteria for qualifying as a guardian listed in section 11a—5(a). We find that the different sections can be read together and that the intent of the legislature is obvious. Accordingly, Luther's argument must be rejected.

Lastly, Luther argues that the statute violates the equal protection clause of the Federal Constitution.

As with all legislative enactments, the statutory section in question carries a strong presumption of constitutionality. (*People v. Blackorby* (1992), 146 Ill. 2d 307, 586 N.E.2d 1231.) Since the challenged statute here does not affect a fundamental right or discriminate against a suspect class, the proper test is that the statute bear a rational relationship to a valid legislative purpose. (*People v. Blackorby* (1992), 146 Ill. 2d 307, 586 N.E.2d 1231.) In other words, a classification is invalid only if it is arbitrary and without a reasonable basis. *Northwestern University v. City of Evanston* (1991), 221 Ill. App. 3d 893, 582 N.E.2d 1251.

Initially, we note that section 11a—5(a) is not unconstitutional on its face. Any distinction in the statute between convicted felons and nonfelons is sufficiently justified by the State's interest in protecting the mentally disabled from neglect, exploitation and abuse.

Although we find that the statute is constitutional on its face, we must also address the question of whether the statute was unconstitutionally applied in this particular case. Whether a statute is valid or invalid under the equal protection clause of the fourteenth amendment often depends on how the statute is construed and applied; it may be valid when given a particular application and invalid when given another. *Fairport, Painesville, & Eastern R.R. Co. v. Meredith* (1934), 292 U.S. 589, 78 L. Ed. 1446, 54 S. Ct. 826.

In *People v. Morrison* (1991), 223 Ill. App. 3d 176, 584 N.E.2d 509, an unwed father who lived with the child and mother and provided financial support from birth to the time the child was removed by the mother was charged with child abduction. This court found that while the statute was constitutional, it had been unconstitutionally applied to that particular defendant. The court further noted that

the circumstances surrounding "the taking" of the child by the father were not those envisioned by the legislature when it passed the child abduction statute requiring the imposition of criminal penalties.

●4 Similarly, in the instant case, we find that section 11a—5(a) of the Act although constitutional could have been unconstitutionally applied to Luther. We realize that *Morrison* was a heightened scrutiny case, while here we have to apply the rational relationship test given that we are not dealing with a fundamental right or a suspect classification. Nonetheless, even under that test, it could be found that there is no rational basis for treating a person with a 36-year old felony conviction differently from any other husband of 43 years who seeks to be appointed as his wife's guardian upon her becoming disabled. However, we are unable to decide on the record before us whether the Act was unconstitutionally applied in this particular case as to Luther. Thus, we find that the cause must be remanded for a hearing on Luther's fitness to act as guardian. If, on remand, Luther proves by a preponderance of the evidence that he is fit and that his appointment would serve the best interests and welfare of Marjorie, then we would find that the Act was unconstitutionally applied and that Marjorie's choice of a guardian should be given "due consideration."

Accordingly, we reverse the judgment of the circuit court of Kankakee County and remand the cause for a hearing.

Reversed and remanded.

BARRY and McCUSKEY, JJ., concur.