*In re* ESTATE OF REGINALD S. GREEN, JR., a Minor (Margaret C. Benson, as Guardian *ad litem* for the Minor, Appellant).

First District (3rd Division)   No. 1—04—0944

Opinion filed August 31, 2005.

Chicago Volunteer Legal Services Foundation, of Chicago (Margaret C. Benson and Patricia Nelson, of counsel), guardian *ad litem*.

JUSTICE ERICKSON delivered the opinion of the court:

Appellant Margaret C. Benson, as guardian *ad litem* (GAL), appeals from the trial court's order denying Kenneth Clair's petition to be appointed guardian of the 13-year-old minor, Reginald S. Green, Jr. On appeal, appellant asserts that when the trial court engaged in a decision to appoint a guardian for the minor, the court's sole responsibility was to provide for the best interest and welfare of the minor. Appellant argues that a trial court possesses the inherent power to appoint a guardian independent of the criteria set forth in section 11—3(a) of the Illinois Probate Act of 1975 (Probate Act or Act) (755 ILCS 5/11—3(a) (West 2004)) (section 11—3(a)).

Alternatively, appellant argues that section 11—3(a) provides only

a list of qualifications the court must consider when appointing a guardian and that the section must be construed liberally to effectuate the purpose and intent of the Act, to provide for the minor's best interest and avoid an unjust result.

This appeal is taken on appellant's brief only.

The facts are not in dispute.

On September 18, 2003, Kenneth Clair filed a *pro se* petition for guardian of a minor, asking to be appointed guardian for the minor, Reginald Green, Jr. At the time of the filing, a familial relationship had already developed, as the minor had been living with petitioner and his daughter for approximately two years. The daughter, 16-year-old Kenyatta Clair (Kenyatta), is the minor's half sister. Petitioner afforded structure and permanency for both children by assuming the role of father.

In his petition, Clair alleged that it was in the minor's best interest to have him appointed guardian for the reasons that the minor's biological mother was financially unable to care for him and the biological father was not involved in the minor's life.

On November 19, 2003, Chicago Volunteer Legal Services (CVLS) was appointed by the court to be GAL of the minor. Benson, a GAL for CVLS, was asked to investigate and report back to the court. Benson interviewed petitioner and the minor, investigated the minor's education and social environment, and reported back.

The GAL reported that petitioner is 54 years of age, unmarried, and although not biologically related to the minor, is the biological father of the minor's sister, Kenyatta. The three lived as a family since August of 2002. Prior to August, both the minor and Kenyatta lived with Carolyn Johnson, the biological mother, and their maternal grandmother until October of 2001, when the grandmother died. Even though the natural mother lived with the family, the grandmother was the children's caretaker. Johnson has had substance abuse problems for most of her life.

Upon the grandmother's death, petitioner took his daughter to live with him, while the minor moved with Johnson to live with "friends." In the summer of 2002, Johnson's "friends" told her they no longer wanted the minor in the house. Petitioner stated the minor's father was never able to take care of him since he lived "pretty much on the streets most of the time." The investigation revealed that Johnson was not supervising the minor, that he was "running wild" and "beginning to get into trouble."

Since living with petitioner, the minor has improved emotionally, academically and socially. He goes to counseling two times per week, regularly attends school, his grades have improved, and he attends church on a regular basis.

Petitioner stated, in his interview, that he gave much thought to accepting the responsibilities of a troubled teenager, but after discussion with his pastor, decided it is Reginald's *only* chance to stay out of trouble. Mr. Clair believes that if he does not become Reginald's guardian, he likely will end up living on the streets.

The GAL's report also made the trial court aware that petitioner had a 1994 felony conviction for possession of a handgun. The petitioner was sentenced to one year of probation.[1]

In a statement before the trial court on January 21, 2004, the minor said he wishes to continue living with petitioner, that he has known petitioner his entire life and he is a "good guy." He added that *he wants petitioner to be his guardian.*

At the same hearing, the GAL recommended that the guardianship would be in the minor's best interest despite petitioner's 1994 conviction, which she described as "insignificant and ten years old," adding "[t]here is no indication that the minor is or will be in any danger living with the petitioner." She expressed that the minor's "only alternative is DCFS [the Department of Children and Family Services] and a good foster care home is unlikely considering his age and circumstances."

At the January 21, 2004, hearing, the foregoing additional information was presented to the court by the GAL (who also filed a "Memorandum of Law in Support of Guardian *Ad Litem*'s Recommendation"). No cross-petition was filed.

The trial court agreed with the GAL, finding it was in Reginald's best interest to have Kenneth Clair appointed his guardian.

Then, on March 3, 2004, at a subsequent hearing, the court denied the petition despite its own conclusion of "best interest."[2] The court based its ruling solely on petitioner's 1994 felony conviction, finding that "as a result of the felony conviction, the petitioner is not qualified to be appointed guardian of the minor."

## ANALYSIS

The issues presented for review involve only questions of law; the standard of review is *de novo. Anderson v. Department of Professional Regulation,* 348 Ill. App. 3d 554, 560, 810 N.E.2d 228 (2004).

On appeal, appellant argues that the trial court may appoint a

---

[1]The record on appeal does not provide the precise offense of which petitioner was convicted.

[2]The trial court found that the minor's mother and father are neither willing nor able to care for the minor, and both consent to the appointment of petitioner as guardian; there are no relatives able and willing to care for the minor or act as his guardian.

guardian for a minor under its inherent authority independent of the Act and in derogation of the qualifications set forth in section 11—3(a).

Appellant discusses *In re Estate of Roy*, 265 Ill. App. 3d 99, 637 N.E.2d 1228 (1994) (*Roy*), as support for her argument. In *Roy*, the appellate court interpreted a parallel section of the Act (755 ILCS 5/11a—5(a) (West 1992)), which precludes convicted felons from acting as guardians of disabled persons. There, the trial court denied the wife's petition to adjudicate her disability and to appoint her husband of 43 years as her guardian, based on the husband's 36-year-old felony convictions for armed robbery. The court rejected her request and appointed her daughter as guardian. *Roy*, 265 Ill. App. 3d at 100. The appellate court rejected the husband's equal protection argument, but remanded the case, holding the section "could have been unconstitutionally applied" since "there is no rational basis for treating a person with a 36-year old felony conviction differently from any other husband of 43 years who seeks to be appointed as his wife's guardian upon her becoming disabled." *Roy*, 265 Ill. App. 3d at 105.

Appellant argues in the wake of *Roy*, the probate courts extended that holding to minor guardianships, no longer mechanically denying petitions due to a prior felony, but scrutinizing the worthiness of petitioners to determine whether their appointments would be in the best interest of the minor.

Appellant acknowledges the appellate court departed from *Roy* in *In re Estate of Muldrow*, 343 Ill. App. 3d 1148, 799 N.E.2d 497 (2003) (*Muldrow*). There, the trial court denied petitioner's attempt to disqualify cross-petitioner as executor of their mother's estate under a similar section of the Act (755 ILCS 5/6—13(a) (West 2002)), basing its decision on *Roy*. The appellate court reversed, holding "[a]n executor is entrusted with property to which others have claims and must safeguard that property and ultimately distribute it in accordance with the law. A convicted felon has demonstrated an inability to act within the confines of the law." *Muldrow*, 343 Ill. App. 3d at 1153.

■ Appellant argues unlike *Muldrow*, which involved a decedent's estate, this case concerns a minor. This difference is significant. The administration of decedents' estates is a creature of statute, whereas the administration of minor guardianships is not, as minor guardianships are derived from the common law and, therefore, a trial court inherently is empowered to appoint a guardian independent of any authority given to the courts under the Act. *In re Estate of Suggs*, 149 Ill. App. 3d 793, 797, 501 N.E.2d 307 (1986) (*Suggs*); *In re Guardianship of Smythe*, 65 Ill. App. 2d 431, 441, 213 N.E.2d 609 (1965) (*Smythe*).

■ The probate court has broad discretion in determining whether to appoint a guardian. "This discretion is not unlimited and will be overturned if the reviewing court finds that the [court] abused its discretion" (*Stevenson v. Hawthorne Elementary School, East St. Louis School District No. 189*, 144 Ill. 2d 294, 302, 579 N.E.2d 852 (1991)) (*Stevenson*), or if its decision is against the manifest weight of the evidence (*In re Marriage of Russell*, 169 Ill. App. 3d 97, 103, 523 N.E.2d 193 (1988)). The appointment must be made "in light of all the relevant facts" and the guiding standard is the best interest of the minor. *Stevenson*, 144 Ill. 2d at 302; 755 ILCS 5/11—5(a) (West 2004).

■ The relevant provisions of the Act are as follows. Section 11—3(a), entitled "Who may act as guardian," provides:

"A person who has attained the age of 18 years, is a resident of the United States, is not of unsound mind, is not an adjudged disabled person as defined in this Act, has not been convicted of a felony, and who the court finds is capable of providing an active and suitable program of guardianship for the minor is qualified to act as guardian of the person and as guardian of the estate." 755 ILCS 5/11—3(a) (West 2004).

Section 11—5(a), entitled, "Appointment of guardian," states:

"Upon the filing of a petition for the appointment of a guardian or on its own motion, the court may appoint a guardian of the estate or of both the person and estate, of a minor, or may appoint a guardian of the person only of a minor or minors, as the court finds to be in the best interest of the minor or minors." 755 ILCS 5/11—5(a) (West 2004).

Section 11—13(e), entitled, "Duties of guardian of a minor," provides in pertinent part:

"Upon petition by any interested person (including the standby or short-term guardian), with such notice to interested persons as the court directs and a finding by the court that it is in the best interest of the minor, the court may *** enter such other orders as the court deems necessary to provide for the best interest of the minor." 755 ILCS 5/11—13(e) (West 2004).

At the outset, it must be noted that unlike *Roy* and *Muldrow*, appellant here is not challenging the constitutionality of section 11—3(a) on equal protection grounds. Appellant's argument is premised on the notion that where, as here, the appointment is in the minor's best interest, a trial court inherently possesses the authority to appoint a guardian independent of the strictures of the Act, namely, the guardianship qualifications set forth in section 11—3(a). The supreme court has stated that "circuit courts of this State have an inherent plenary power to appoint guardians of minors independent of any authority given to the courts by the legislature." *In re M.M.*, 156 Ill.

2d 53, 63, 619 N.E.2d 702 (1993) (*M.M.*); see also *Suggs*, 149 Ill. App. 3d at 797, citing *Smythe*, 65 Ill. App. 2d at 441 (circuit court may appoint guardians of minors "independent of any authority that the Probate Act or other legislation confers").

The issue presented in this case is not resolved by construing the meaning of section 11—3(a). If the circuit courts "have inherent power to appoint guardians of the estates and persons of minors, independent of statute, a discussion of whether the statute purporting to give this jurisdiction to the courts had been complied with is irrelevant to the question of whether or not the circuit courts of this state have such jurisdiction." *Smythe*, 65 Ill. App. 2d at 439; see also *People ex rel. Ryan v. Sempek*, 12 Ill. 2d 581, 584, 147 N.E.2d 295 (1958) ("if the power to act in the particular case exists independently of the statute, the validity of the latter is a mere abstract question not necessary for determination of the issue presented"). Accordingly, it must be determined whether a circuit court may appoint a guardian in derogation of section 11—3(a) where the appointment is in the minor's best interest.

In *M.M.*, the supreme court was presented with several cases in which circuit judges sought to impose restrictions on a guardian's power to consent to an adoption. In each case, the circuit judge found it was in the child's best interest to retain contact with his or her biological parents. As a result, the circuit judges attempted to limit the guardian's consent to an adoption to instances where the adoptive parents had agreed to keep the child in contact with his or her biological parents. *M.M.*, 156 Ill. 2d at 57-59. In rejecting this practice, the supreme court acknowledged the circuit court's "inherent plenary power to appoint guardians of minors independent of any authority given to the courts by the legislature." *M.M.*, 156 Ill. 2d at 63.

The *M.M.* court went on to explain that as early as *Cowls v. Cowls*, 8 Ill. 435 (1846) (*Cowls*), the supreme court "upheld a custody decree, not on the basis of jurisdiction conferred by the Divorce Act, but under the 'power of the court of Chancery to interfere with and control, not only the estates but the persons and custody of all minors within the limits of its jurisdiction.' " *M.M.*, 156 Ill. 2d at 68, quoting *Cowls*, 8 Ill. at 437. The court reasoned that "[t]he legislature conferred no new authority or jurisdiction upon the court; '[i]t was by its original jurisdiction clothed with the same powers before.' " *M.M.*, 156 Ill. 2d at 68, quoting *Cowls*, 8 Ill. at 438.

Also instructive is *In re S.G.*, 175 Ill. 2d 471, 677 N.E.2d 920 (1997) (*S.G.*), where the supreme court addressed whether the timeliness requirements of section 2—14 of the Juvenile Court Act of 1987 (705 ILCS 405/2—14 (West 1994)), which requires dismissal of a petition

for adjudication of wardship if the adjudicatory hearing is not completed within the statutory time period, violate the separation of powers provision of the Illinois Constitution. *S.G.*, 175 Ill. 2d at 486.

The supreme court held that neither *parens patriae* nor the court's inherent guardianship powers provide a basis to invalidate the section. *S.G.*, 175 Ill. 2d at 488. The court further held "section 2—14 does not take from the courts the judicial power to adjudicate a child's best interest, but merely requires that judicial duties get exercised in a manner that protects all the rights of the parties." *S.G.*, 175 Ill. 2d at 492.

In this case, petitioner seeks appointment of guardianship pursuant to the Probate Act, unlike *M.M.* and *S.G.*, which involved the circuit courts' exercise of authority derived exclusively from the Juvenile Court Act. Although a court's power to appoint the guardian of a minor is now conferred statutorily by the Probate Act, such authority also existed at common law. *In re Estates of Herrod*, 254 Ill. App. 3d 1061, 1064-65, 626 N.E.2d 1334 (1993) (*Herrod*). " '[T]he jurisdiction exists *** by inheritance from the English courts of chancery and not because equitable rights or titles are involved.' " *M.M.*, 156 Ill. 2d at 63, quoting *Thomas v. Thomas*, 250 Ill. 354, 95 N.E. 345 (1911). " 'The power conferred *** is but of the same character of the jurisdiction exercised by the court of chancery over the persons and property of infants, having foundation in the prerogative of the Crown, flowing from its general power and duty, as parens patriae, to protect those who have no other lawful protector.' " *Smythe*, 65 Ill. App. 2d at 440, quoting *In re Petition of Ferrier*, 103 Ill. 367, 371-72 (1882).

■ Applying the reasoning espoused in *M.M.* and *S.G.*, a trial court's power to appoint the guardian of a minor does not transcend its traditional common law authority; it exists independently of any statute, including the Probate Act. See *M.M.*, 156 Ill. 2d at 64. Although the legislature may preclude or limit the authority of the trial courts in legislatively created "justiciable matters," where, as here, there exists a counterpart, in common law or equity, to a legislative enactment of a comprehensive statutory scheme, the court is not bound to proceed within the strictures of the statute. *M.M.*, 156 Ill. 2d at 65-66. " 'Courts of equity have plenary jurisdiction over the persons and estates of infants, and will in the exercise of that jurisdiction, cause to be done whatever may be necessary to preserve their estates and protect their interest.' " *Smythe*, 65 Ill. App. 2d at 440-41, quoting *Ames v. Ames*, 151 Ill. 280, 285, 37 N.E. 890 (1894).

Unlike *S.G.*, application of the relevant section here operates to strip the trial court of its judicial power to adjudicate the minor's best

interest. This runs contrary to the court's sole responsibility "to provide for the best interest and welfare of the minor." *Herrod*, 254 Ill. App. 3d at 1065; *Suggs*, 149 Ill. App. 3d at 798.

Here it is clear that the trial court meticulously and correctly considered all relevant factors when coming to its decision that it is in Reginald Green, Jr.'s best interest to have petitioner become his guardian.

■ The trial court's exercise of its inherent authority in this case "does not represent an independent judicial power to strike down legislation on grounds that it violates 'the best interest of the child' " (*S.G.*, 175 Ill. 2d at 488); rather, it enables the court to comply with its obligation to safeguard the best interests of the minor where legislative qualifications are incompatible with the greater aims of the Act. If the qualifications in section 11—3(a) are given greater priority than the minor's best interest, section 11—5(a) of the Act, requiring the appointment of a guardian whom "the court finds to be in the best interest of the minor" (755 ILCS 5/11—5(a) (West 2004)), and section 11—13(e), which permits the court to enter any order "the court deems necessary to provide for the best interest of the minor" (755 ILCS 5/11—13(e) (West 2004)), would be rendered superfluous. "Each word, clause and sentence of [a] statute, if possible, must be given reasonable meaning and not rendered superfluous." *In re Detention of Lieberman*, 201 Ill. 2d 300, 308, 776 N.E.2d 218 (2002) (*Lieberman*). Section 11—3(a) must be read with consideration of these two additional relevant sections of the Act, since all provisions of a statutory enactment are viewed as a whole; words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute. *Lieberman*, 201 Ill. 2d at 308. Section 11—3(a) also must be read in the context of the Act's greater purpose to protect the minor's best interest. The court properly may consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *Lieberman*, 201 Ill. 2d at 308.

Courts also may presume the General Assembly, in its enactment of the legislation, did not intend absurdity, inconvenience or injustice. *Lieberman*, 201 Ill. 2d at 309. Here, strict application of section 11—3 would lead to unjust consequences by forcing the court to ignore its own conclusion and subordinate the minor's best interest to generic criteria enacted to serve the minor's best interest. To the extent the Act is in derogation of the common law, it must be construed strictly in favor of petitioner, as he is subject to its operation. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 68-69, 809 N.E.2d 1248 (2004).

The trial court determined petitioner's appointment to be in the minor's best interest; the court's subsequent denial of the petition was against the manifest weight of the evidence. Accordingly, this court exercises its power pursuant to Supreme Court Rule 366 (155 Ill. 2d R. 366), and grants the instant petition for petitioner's appointment as guardian of the minor. *In re Petition of K.M.*, 274 Ill. App. 3d 189, 205, 653 N.E.2d 888 (1995).

For the reasons set forth above, the judgment of the circuit court of Cook County is reversed.

Reversed; petition granted.

KARNEZIS, P.J., and SOUTH, J., concur.