2022 IL App (2d) 210272-U
No. 2-21-0272
Order filed January 26, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* Estate of SULMA ARELI SALVADOR FELIPE, a minor | ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| | | No. 21-P-38 |
| (Rocio Becerril, Petitioner-Appellant v. Sonia M. Felipe Garcia and Juan A. Salvador Mendoza, Respondents-Appellees). | ) ) ) | Honorable James D. Orel, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Bridges and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*: Appellant did not demonstrate that trial court abused its discretion in denying guardianship petition and motion to reconsider.

¶ 2   The petitioner, Rocio Becerril, filed a petition to be appointed guardian of the person of Sulma Areli Salvador Felipe. Rocio also asked that, after appointing her, the trial court make findings that would allow Sulma, an unaccompanied juvenile from Guatemala who fled violence and sexual assault, to apply for a particular immigration status. The trial court summarily denied the guardianship petition and the motion for findings. Two days later, Sulma turned 18. Rocio moved for reconsideration and for an order granting guardianship *nunc pro tunc*, noting that the trial court's stated reason for denying the petition was legally incorrect, and submitting extensive

documentation supporting the petition. The trial court denied the motion to reconsider, and Rocio appealed. Although we agree that the trial court made a legal error in its initial ruling, we nevertheless affirm for the reasons explained below. We also note that, because of a recent amendment to section 11-5.5 of the Probate Act (755 ILCS 5/11-5.5(e)(1) (West 2020)), our decision does not foreclose Sulma and Rocio from achieving the end they seek.

¶ 3                                    I. BACKGROUND

¶ 4      The following facts are drawn from the verified pleadings. Sulma was born on January 23, 2003, in Guatemala. Her cousins became angry at her father and determined to harm her as a way of hurting her father. One of the cousins, who was known to have killed someone, physically and sexually assaulted her, and two other cousins threatened to rape her. Sulma's parents could not keep her safe and Sulma fled Guatemala. She entered the United States in November 2018. She was detained in the custody of the Department of Homeland Security (DHS) and resided at a shelter for a little more than two years.

¶ 5      Rocio applied to sponsor and become a guardian for Sulma. After conducting an extensive background review on Rocio that included a CANTS check by the Illinois Department of Children and Family Services, the Office of Refugee Resettlement (ORR) approved Rocio as Sulma's sponsor and caretaker. They released Sulma into Rocio's custody on December 19, 2020. Rocio filed the guardianship petition on January 11, 2021, attaching a nomination form in which Sulma nominated Rocio to be her guardian. The petition was set to be heard on January 21.

¶ 6      On January 20, Rocio filed a motion for special immigrant juvenile status (SIJS) findings. The Immigration and Nationality Act (8 U.S.C. § 1101 *et seq.* (2018)) allows an immigrant who meets the requirements for SIJS to avoid removal and eventually to apply for legal permanent residency in the United States. See *id*. § 1255(h). To be eligible for SIJS, a person must be placed

in the custody of an adult guardian by a state court, and the court must find that reunification of the person with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis, and it is not in the person's best interest to be returned to his or her country of nationality. *Id*. § 1101(a)(27)(J). State law—in Illinois, the Probate Act—spells out the requirements for SIJS proceedings in Illinois courts. See 755 ILCS 5/11-5.5 (West 2018). Rocio's motion for SIJS findings detailed the Illinois and federal statutes governing SIJS and the facts showing that Sulma met the statutory requirements. At the time, section 11-1 of the Probate Act defined a "minor" as someone under the age of 18, and section 11-5.5 did not contain any different definition. See *id*. §§ 11-1, 11-5.5.

¶ 7 Rocio noticed up the motion to be heard on January 21 at the same time as the guardianship petition. She filed a notice of motion that had been signed by Sulma's parents, showing that they had received the motion. The exhibits to the motion, which were in both Spanish and English, included Sulma's birth certificate and consents to the appointment of Rocio as Sulma's guardian that were signed by both of Sulma's parents.

¶ 8 When the case was called, Rocio's attorney stepped up and advised the trial court that a Spanish interpreter would be needed. The trial court indicated that it did not know how long it would take to get the interpreter there and that it would either pass the case or, if the interpreter were not available, continue the case to another date. The attorney asked not to continue it if possible, as Sulma would turn 18 two days later, on January 23. The trial court reacted negatively:

> "And you're asking me to approve everything in one day without any looking into the Guardian *ad Litem*, with the Guardian *ad Litem* that I'm required to.
>
> * * *

That's not going to work. I don't operate that way. I'm sorry. I don't know anything about the guardian that you're attempting to bring in and to give me one day's notice, one business day left, it's not going to work.

\* \* \*

Cancel the interpreter. There's no way I'm going to appoint a guardian without an investigation. There's just no way. That's not according to statute. So I can deny your petition. You can withdraw it, whatever you want to do. But you're not going to, you're not going to operate that way in this courtroom."

The written order stated, at the trial court's direction, that the petition for guardianship was denied because "appointment of a Guardian Ad Litem (GAL) is required by the Probate Act and there is not sufficient time before the Minor's 18th birthday to appoint a Guardian Ad Litem (GAL) and receive that GAL's investigation report. Minor turns 18 in 2 days. This is initial date on presentation of petition[;] court further has no backgroung [*sic*] on Guardian requested by petitioner."

¶ 9    Rocio filed a motion to reconsider the trial court's rulings on the guardianship petition and the motion for SIJS findings. In it, she pointed out that the Probate Act did not require an investigation by a GAL before a guardian could be appointed, nor did any Illinois Supreme Court Rule or local rule require such an investigation. Additionally, she argued that, although the trial court had the power and discretion to appoint a GAL if necessary, here it was not necessary and imposed a substantial burden on Sulma, who faced the imminent risk of aging out of the "dependent minor" status she needed to apply for SIJS. Rocio also contended that she met the Probate Act's requirements for appointment as a guardian for Sulma, noting that DHS had conducted an extensive background investigation of her already and attaching the documentation

of that investigation. Rocio asked the trial court to reverse its previous denial, and grant the guardianship and make the SIJS findings *nunc pro tunc*.

¶ 10    On March 4, 2021, the trial court refused to hear argument on the motion to reconsider because it had not received courtesy copies of the motion and had not reviewed it. During the colloquy, Rocio noted that, because Sulma had been released from ORR custody only a short time before her 18th birthday, Rocio had not been able to bring her guardianship petition earlier. She further noted that both of Sulma's parents had consented to the guardianship. The trial court continued the hearing to April 7, 2021. On that day, the trial court again declined to hear the case as the clerk had not docketed the date despite the entry of the earlier continuance in a formal order. In addition, although Rocio had forwarded courtesy copies to the judge's own email, the judge could not accept direct communications from the parties and instead required that everything be sent to the judge's clerk's email. The trial court again continued the case, to April 20.

¶ 11    On April 20, the trial court began the hearing with its ruling. Despite indicating that it planned to "hear the merits" of the motion, it immediately began explaining why it would deny the motion. At no point did the court offer Rocio any opportunity to present oral argument. The court first noted the requirements for a motion to reconsider and noted that the sole basis for the motion was the contention that it had erred in its previous application of existing law. However, the court stated, the Probate Act gave it discretion in determining whether to grant a guardianship petition. The court said that the petition was only noticed up on January 20 for a hearing the next day, and the trial court did not know if it was an emergency. The trial court continued:

> "And the biggest problem that the Court had at that time was that the ward, the alleged ward, was going to turn 18 the following Saturday or Sunday. So what the

petitioner asked this Court to do in one day was to look at the petition and grant a guardianship to someone this Court has never seen or heard from.

   Now, the order that has been presented by [Rocio's attorney] today indicates that this ward is now over the age 18 yet she wants me to declare in the order that she's a minor. So the motion has problems; the proposed order has problems; you're not telling me how I erred in the motion, so for those reasons, I'll deny without prejudice."

The trial court noted that the case was now "closed." This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13    We note that the appellees have not filed a brief in this court and Rocio's brief is the only one before us. However, as the arguments raised by Rocio are relatively straightforward, we may consider them without the aid of an appellees' brief pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). We therefore turn to the substance of the appeal.

¶ 14    On appeal, Rocio asks us to reverse the trial court's ruling. That outcome is not appropriate here, as we explain. However, our decision does not leave Rocio (or Sulma) without recourse.

¶ 15    A court has broad discretion in deciding whether to appoint a guardian. *In re Estate of Green*, 359 Ill. App. 3d 730, 735 (2005). Thus, we will reverse its decision only where an appellant demonstrates that the trial court abused that discretion. *Id.* A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or no reasonable person would take the view adopted by the trial court, or when its ruling rests on an error of law. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11.

¶ 16    Here, the trial court appeared to base its decision to deny the guardianship petition (and thus to also deny the motion for SIJS findings) largely on its belief that the Probate Act required it

to appoint a GAL to investigate the potential guardian before any appointment could be made. This was error. The Probate Act contains no such requirement. To the extent that its ruling rested on this error of law, it was an abuse of discretion. *Olsen*, 2015 IL App (2d) 140267, ¶ 11.

¶ 17    However, as the trial court noted during the hearing on the motion to reconsider, the "main problem" preventing the trial court from granting the guardianship petition was that it was not sufficiently familiar with Rocio's qualifications and fitness to act as Sulma's guardian. Its concern with these matters was perfectly appropriate; a trial court must be careful to ensure that the appointment of a guardian is in a child's best interests. *Green*, 359 Ill. App. 3d at 735. And although the trial court often acted abruptly when considering the issues in this case (and perhaps would have benefitted from perusing the pleadings on file more carefully), we must note that counsel for Rocio largely failed to draw the trial court's attention to facts supporting the guardianship petition. For instance, although Sulma's parents had acknowledged receiving the motion for SIJS findings and had consented to the appointment of Rocio as Sulma's guardian, the attorney never advised the trial court of these facts. Similarly, counsel did not advise the trial court, at the initial hearing, of the reason for the time constraints or the fact that Rocio had already undergone an extensive investigation and approval process by federal and state agencies before Sulma was released to her care.

¶ 18    We understand that counsel may have found the forcefulness and abruptness of the trial court's manner intimidating. However, an advocate bears responsibility for bringing the evidence that supports her client's case to the attention of the court, and even in the face of a hostile court must seek to make a record. Without such a record, she cannot prevail on appeal. Given the trial court's lack of information and its responsibility to safeguard Sulma's best interests, its denial of

the guardianship petition and the motion for SIJS findings was not arbitrary or unreasonable, and thus was not an abuse of discretion. *Olsen*, 2015 IL App (2d) 140267, ¶ 11.

¶ 19     As for the motion for reconsideration, the trial court acted properly in denying it because the relief sought by Rocio—the entry of an order granting the guardianship petition and motion for SIJS findings *nunc pro tunc*—was not possible. A *nunc pro tunc* order can be used to correct the record to accurately reflect a prior ruling that was actually made. See *Kooyenga v. Hertz Equipment Rentals, Inc.*, 79 Ill. App. 3d 1051, 1058 (1979). The correction then applies from the date of the prior order, as if the prior order had contained the correction to begin with. *Id*. at 1059. However, a *nunc pro tunc* order cannot be used to enter an entirely new ruling upon reconsideration, which is what Rocio requested. See *People v. Jessie B.*, 327 Ill. App. 3d 1084, 1089 (2002). The trial court was correct that it simply was not empowered to reverse its earlier ruling through a *nunc pro tunc* order.

¶ 20     We understand why Rocio sought to reverse the trial court's ruling retroactively, as Sulma was no longer under the age of 18 at the time Rocio filed the motion for reconsideration. Thus, when Rocio's motion for reconsideration was filed and heard, Sulma was no longer a "minor" as that term was defined in the Probate Act. See 755 ILCS 5/11-1 (West 2018)) (defining "minor" as "a person who has not attained the age of 18 years"); *compare id*. § 11-5.5 (governing proceedings for the entry of SIJS findings; no contrary definition of "minor"). Unfortunately for Rocio, the trial court could not go back in time and simply reach a different decision before Sulma turned 18.

¶ 21     However, all is not lost for Sulma and Rocio. During the pendency of this appeal, the Probate Act was amended, and it now defines "minor" more expansively to include persons between the ages of 18 and 21 for the limited purpose of SIJS proceedings. See 755 ILCS 5/11-

5.5(e) (2020), *as amended by* P.A. 101-121 (eff. Aug. 6, 2021).  Thus, Sulma now qualifies as a "minor" despite being over the age of 18, and Rocio may file a new petition for guardianship and motion for SIJS findings.  We emphasize that nothing in our affirmance of the trial court's previous actions in this case should be construed to preclude or limit in any way the fresh consideration of any such new petition and motion.  See *Hayashi v. Illinois Department of Financial and Professional Regulation*, 2014 IL 116023, ¶ 46 (if, after judgment was rendered, there has been a change in the facts or the law that establish a new basis for the parties' claims or defenses, *res judicata* does not apply and a subsequent action is not barred).  Further, we are mindful of the Code of Judicial Conduct, Illinois Supreme Court Rule 63(A)(3), which provides that "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity" (Ill. S. Ct. R. 63(A)(3) (eff. Dec. 16, 2020), requiring a judge to maintain an impartial attitude and exercise a high degree of patience and forbearance with litigants and counsel.  We strongly recommend that the trial judge who handles the new petition exercises sufficient patience to allow her counsel to present her case fully.

¶ 22                                   III. CONCLUSION

¶ 23     For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 24     Affirmed.