# Illinois Official Reports

## Appellate Court

*McCormick v. Robertson*, **2014 IL App (4th) 140208**

| | |
|---|---|
| Appellate Court Caption | JOSHUA A. McCORMICK, Petitioner-Appellant, v. ALEXUS N. ROBERTSON, Respondent-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-14-0208 |
| Filed | August 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over custody and related matters with respect to the child born in Missouri as a result of the brief relationship petitioner, a resident of Illinois, had with respondent mother, a resident of Missouri, the judgment entered by an Illinois circuit court pursuant to the father's petition in February 2010 was improperly declared void by the circuit court in March 2014 following a series of motions filed by the parties on the ground that the trial court lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, since the appellate court held that the trial court had subject matter jurisdiction over the initial petition as a justiciable matter within the general jurisdiction conferred on the circuit court by article VI, section 9, of the Illinois Constitution of 1970, and vacated the trial court's order declaring the order of February 2010 void and dismissing the petition with prejudice. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 10-F-17; the Hon. Brian L. McPheters, Judge, presiding. |
| Judgment | Order vacated. |

Counsel on
Appeal

Paul R. Wilson, Jr. (argued), of Wilson Law Offices, of Rantoul, for appellant.

Ronald S. Langacker (argued), of Urbana, for appellee.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Appleton and Justice Pope concurred in the judgment and opinion.

**OPINION**

¶ 1    In January 2010, petitioner, Joshua A. McCormick, filed a "petition to establish father and child relationship, custody and related matters" in the Champaign County circuit court. He sought an order establishing the existence of a father-child relationship and joint custody of his minor child, L.M. In February 2010, the circuit court entered a "judgment of parentage, custody [and] related matters," which incorporated the terms of the joint parenting agreement signed by Joshua and respondent, Alexus N. Robertson, regarding the care and custody of L.M.

¶ 2    In March 2014, following a series of motions filed by the parties in November and December 2013, the Champaign County circuit court found the February 8, 2010, order void and dismissed Joshua's initial January 2010 petition with prejudice. The court determined it did not have jurisdiction to enter the February 2010 order pursuant to section 201 of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) (750 ILCS 36/201 (West 2010)).

¶ 3    On appeal, Joshua asserts the Champaign County circuit court erred in finding the February 2010 order void and dismissing his initial January 15, 2010, petition because the court had subject-matter jurisdiction to hear the matter. In the alternative, Joshua contends Alexus should be estopped from attacking the February 2010 order because she "took advantage" of it for four years. Additionally, Joshua argues Alexus improperly removed L.M. from the State of Missouri in violation of the order. We find the circuit court possessed subject-matter jurisdiction and, therefore, we vacate the trial court's March 2014 order that found the February 2010 order void and dismissed Joshua's original petition.

¶ 4                                    I. BACKGROUND

¶ 5    Joshua, a resident of Illinois, and Alexus, then a resident of Missouri, met in Missouri in 2008. Their brief relationship resulted in the conception and birth of L.M. (born April 23, 2009) in Missouri. On January 15, 2010, through his counsel, Joshua filed a "petition to establish father and child relationship, custody and related matters" in the Champaign County circuit court pursuant to the Illinois Parentage Act of 1984 (750 ILCS 45/1 to 28 (West 2010)). Joshua sought an order establishing the existence of a father-child relationship and joint custody of L.M. On January 19, 2010, an entry of appearance, prepared by Joshua's attorney

and signed by Alexus, was filed in the circuit court. The entry of appearance stated it "confer[red] all jurisdiction upon said Court over [Alexus's] person and the subject matter of this suit."

¶ 6 On January 19, 2010, Joshua and Alexus appeared in the Champaign County circuit court for a hearing on Joshua's petition. Alexus proceeded *pro se*. At the hearing, the parties represented they had entered into a written joint parenting agreement and presented it to the court for its consideration. According to the agreement, Joshua and Alexus would share custody of L.M., with Alexus being the primary residential custodian. The agreement contained a visitation schedule to be implemented upon Joshua's return from active duty military service. The issue of child support was reserved.

¶ 7 On February 8, 2010, the Champaign County circuit court entered its "judgment of parentage, custody [and] related matters." In its order, the court found (1) it had jurisdiction over the parties and the subject-matter at issue; (2) Joshua had been domiciled in the State of Illinois for at least 90 days preceding the date of the order; and (3) L.M. was born in Missouri. (The order is silent regarding the state of L.M.'s residence.) The court incorporated and "expressly ratified, confirmed, approved and adopted as the orders of this Court," the January 19, 2010, joint parenting agreement signed by the parties.

¶ 8 In November 2012, Alexus and L.M. moved to Las Vegas, Nevada, with Alexus's parents. The parties disagree as to whether Joshua objected to the move.

¶ 9 On December 4, 2013, Joshua filed a "petition to terminate joint parenting agreement, joint custody, and for custody to be awarded to petitioner, father" in the Champaign County circuit court. On December 11, 2013, Alexus filed a "petition to establish UCCJEA jurisdiction, custody and child support" in the district court of Clark County, Nevada, alleging in part the February 8, 2010, judgment of the Champaign County circuit court was void because the circuit court did not have subject-matter jurisdiction under the UCCJEA. On December 13, 2013, Alexus filed a "motion to vacate February 8, 2010[,] judgment, and/or motion to dismiss petition for change of custody for lack of jurisdiction" in the Champaign County circuit court. Alexus's petition requested, in part, the circuit court to stay the Illinois custody proceedings until it communicated with the Nevada court pursuant to section 206(b) of the UCCJEA (750 ILCS 36/206(b) (West 2012)).

¶ 10 On February 6, 2014, the Illinois and Nevada courts participated in a telephone conference call in which all parties were present with counsel. The Illinois and Nevada courts determined that (1) pursuant to the UCCJEA, the Champaign County circuit court did not have subject-matter jurisdiction; (2) the February 8, 2010, judgment of the Champaign County circuit court was void for lack of subject-matter jurisdiction; and (3) any further proceedings should be conducted in Nevada, which was then L.M.'s "home state" under the UCCJEA (750 ILCS 36/102(7) (West 2012)).

¶ 11 On March 12, 2014, the Champaign County circuit court entered an order finding the February 2010 order void, stating that, "the State of Illinois did not have jurisdiction over the minor child, [L.M.], pursuant to the UCCJEA at the time the [j]udgment was entered on February 8th, 2010," and dismissing Joshua's original January 15, 2010, petition with prejudice.

¶ 12 This appeal followed.

II. ANALYSIS

The central issue for this court to decide is whether the Champaign County circuit court lacked subject-matter jurisdiction, thus rendering its February 2010 custody order void. Judgments entered in a civil proceeding may be collaterally attacked as void only where there is a total lack of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties. *Johnston v. City of Bloomington*, 77 Ill. 2d 108, 112, 395 N.E.2d 549, 550 (1979). "Any order rendered by a court lacking subject-matter jurisdiction is void and subject to attack at any time." *In re Nathan A.C.*, 385 Ill. App. 3d 1063, 1069, 904 N.E.2d 112, 117 (2008).

" '[S]ubject matter jurisdiction' refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334, 770 N.E.2d 177, 184 (2002). The issue of whether the circuit court had subject-matter jurisdiction over the cause presents a question of law that we review *de novo*. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 26, 959 N.E.2d 1133.

Joshua asserts the Champaign County circuit court erred in finding the February 2010 order was void and dismissing his initial petition. He argues the circuit court had subject-matter jurisdiction over the proceedings pursuant to article VI, section 9, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 9).

Although in her written entry of appearance filed in January 2010, Alexus initially agreed the circuit court possessed subject-matter jurisdiction, she now contends the court lacked subject-matter jurisdiction under the UCCJEA, which she argues limits the jurisdiction of circuit courts in interstate custody cases. See 750 ILCS 36/201 (West 2010). Her initial agreement notwithstanding, a lack of subject-matter jurisdiction is not subject to waiver and cannot be cured by consent. *In re M.W.*, 232 Ill. 2d 408, 417, 905 N.E.2d 757, 765 (2009).

Whether the Champaign County circuit court possessed subject-matter jurisdiction to render its initial February 2010 custody decision is dependent upon whether, as a general matter, circuit courts derive their jurisdiction in such cases from the Illinois Constitution, as asserted by Joshua, or the UCCJEA, as urged by Alexus. No issue exists as to personal jurisdiction of the parties in this case.

Article VI, section 9, of the Illinois Constitution of 1970 vests circuit courts with "original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction." Ill. Const. 1970, art. VI, § 9. A "justiciable matter" has been defined as "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335, 770 N.E.2d at 184.

On the other hand, the UCCJEA, which provides state courts with a method to resolve interstate child-custody disputes, states the following regarding the jurisdiction of Illinois courts in such custody matters:

> "(a) Except as otherwise provided in Section 204, a court of this State has jurisdiction to make an initial child-custody determination only if:
>
> > (1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a

parent or person acting as a parent continues to live in this State;

(2) a court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under Section 207 or 208, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

(B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under Section 207 or 208; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

(b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this State.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination." 750 ILCS 36/201 (West 2010).

¶ 21    Under the UCCJEA, " '[h]ome state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." 750 ILCS 36/102(7) (West 2010). Thus, pursuant to section 201 of the UCCJEA, an Illinois court "has jurisdiction to make an initial child-custody determination" (absent an emergency, which is provided for in section 204) only if it finds one of the four criteria listed in section 201(a) of the UCCJEA applicable. 750 ILCS 36/201(a) (West 2010).

¶ 22    Simply applying the UCCJEA to the facts, it does not appear any of the four criteria listed in section 201(a) were present when Joshua filed his original petition in January 2010. L.M. was not conceived or born in Illinois and had not resided in Illinois. At all times, L.M. resided with Alexus in Missouri until they moved to Nevada in November 2012. Based on these facts, and pursuant to the UCCJEA, Missouri, not Illinois, would have been considered L.M.'s "home state" in January 2010. The record contains no evidence the State of Missouri declined to exercise its jurisdiction at that time. Thus, according to Alexus, the UCCJEA did not confer jurisdiction on an Illinois court in January 2010. Even if Alexus is correct, however, resolution of the subject-matter-jurisdiction issue requires us to delve further to determine whether Illinois circuit courts ultimately derive their jurisdiction to hear child-custody matters from the state's constitution, as opposed to the UCCJEA.

¶ 23    In order to determine the ultimate source of the circuit court's subject-matter jurisdiction in custody cases, we look to the Illinois Supreme Court's decisions relating generally to subject-matter jurisdiction jurisprudence for guidance. In a series of cases, our supreme court determined that the 1964 and 1970 amendments to the Illinois Constitution limited the legislature's authority to impose restrictions upon the jurisdiction of our circuit courts. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 759 N.E.2d 509 (2001); *Belleville Toyota*, 199

Ill. 2d 325, 770 N.E.2d 177; *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 795 N.E.2d 281 (2003); *M.W.*, 232 Ill. 2d 408, 905 N.E.2d 757. Prior to these amendments, the Illinois Constitution provided that circuit courts possessed " 'original jurisdiction of all causes in law and equity.' " *Belleville Toyota*, 199 Ill. 2d at 336, 770 N.E.2d at 185 (quoting Ill. Const. 1870, art. VI, § 12). "Thus, in cases involving purely statutory causes of action, \*\*\* unless the statutory requirements were satisfied, a court lacked jurisdiction to grant the relief requested." *Id.* at 336-37, 770 N.E.2d at 185.

¶ 24    However, the 1964 amendment to the Illinois Constitution–the language of which is retained in our current constitution–expanded the jurisdiction of our circuit courts by granting them " 'original jurisdiction of all justiciable matters, and such powers of review of administrative action as may be provided by law.' " *Id.* at 337, 770 N.E.2d at 186 (quoting Ill. Const. 1870, art. VI, § 9 (amended 1964)). In other words, the amendments "created a single integrated trial court vested with jurisdiction to adjudicate all controversies." *Steinbrecher*, 197 Ill. 2d at 530, 759 N.E.2d at 518. "No longer did a court's failure to follow the language of a statute divest a court of jurisdiction, but rather, that failure simply resulted in a voidable order." *In re John C.M.*, 382 Ill. App. 3d 553, 563, 904 N.E.2d 50, 60 (2008) (citing *Steinbrecher*, 197 Ill. 2d at 531-32, 759 N.E.2d at 519-20).

¶ 25    In *Belleville Toyota*, our supreme court emphasized, "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Belleville Toyota*, 199 Ill. 2d at 334, 770 N.E.2d at 184. "Thus, in order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, [need only] present a justiciable matter." *Id.* While the legislature is free to create new justiciable matters by enacting legislation, the creation of a new justiciable matter does not mean the legislature confers subject-matter jurisdiction on the courts since such jurisdiction is derived only from the constitution. *Id.* at 335, 770 N.E.2d at 185. The *Belleville Toyota* court expressly rejected the suggestion in prior cases that the legislature may impose "conditions precedent" to a circuit court's exercise of its constitutionally defined jurisdiction. *Id.* at 335-37, 770 N.E.2d at 185. See also *Graf*, 206 Ill. 2d at 552, 795 N.E.2d at 287 (specifically limiting the precedential value of case law, preexisting the 1964 and 1970 amendments, which held the failure to comply with statutory requirements rendered the court without jurisdiction).

¶ 26    In *M.W.*, our supreme court again examined the source of the circuit court's subject-matter jurisdiction. In that case, M.W. was adjudicated delinquent despite her father having not been served with a copy of the amended delinquency petition, as required by section 5-530 of the Juvenile Court Act of 1987 (705 ILCS 405/5-530 (West 2004)). *M.W.*, 232 Ill. 2d at 412, 905 N.E.2d at 762. The appellate court vacated the order, holding that because the procedural requirements of the Juvenile Court Act of 1987 were not met, the circuit court was deprived of subject-matter jurisdiction. *Id.* Our supreme court disagreed, noting "not every error made by the trial court or every failure to strictly comply with the provisions of the statute creating the justiciable matter is an act in excess of statutory authority that renders the court's judgment void." *Id.* at 422, 905 N.E.2d at 768. "[T]he question of subject matter jurisdiction is a matter of the justiciability of the class of cases to which the instant case belongs. Error or irregularity in the proceeding, while it may require reversal of the court's judgment on appeal, does not oust subject matter jurisdiction once it is acquired." *Id.* at 423, 905 N.E.2d at 768. The supreme court, applying *Belleville Toyota*, found "the appellate court incorrectly concluded that

- 6 -

compliance with the notice requirements of the Act was an unwaivable condition precedent to the circuit court's exercise of subject matter jurisdiction over the justiciable matter before it." *Id*. at 426, 905 N.E.2d at 770.

¶ 27 Following *Belleville Toyota*, it is clear that–with the exception of administrative actions–our circuit courts derive their subject-matter jurisdiction exclusively from the Illinois Constitution. While the legislature can enact legislation which creates new justiciable matters, it cannot impose limits on the circuit court's constitutionally derived subject-matter jurisdiction. Thus, whereas the UCCJEA may procedurally limit the circumstances in which a circuit court may exercise its power to render a custody determination (see 750 ILCS 36/201 (West 2010)), it may not deprive the circuit court of its constitutionally derived subject-matter jurisdiction to decide the matter in the first place. See *In re Estate of Green*, 359 Ill. App. 3d 730, 736, 835 N.E.2d 403, 408 (2005) ("If the circuit courts 'have inherent power to appoint guardians of the estates and persons of minors, independent of statute, a discussion of whether the statute purporting to give this jurisdiction to the courts had been complied with is irrelevant to the question of whether or not the circuit courts of this state have such jurisdiction.' " (quoting *In re Guardianship of Smythe*, 65 Ill. App. 2d 431, 439, 213 N.E.2d 609, 612-13 (1965))); *McCarthy v. Pointer*, 2013 IL App (1st) 121688, ¶ 13, 3 N.E.3d 852 (" 'Once a court has obtained jurisdiction, an order will not be rendered void nor will the court lose jurisdiction merely because of an error or impropriety in the court's determination of the facts or law.' " (quoting *Government Employees Insurance Co. v. Hersey*, 397 Ill. App. 3d 551, 554, 922 N.E.2d 518, 521 (2010))).

¶ 28 In this context, we find that the child-custody proceeding here was a justiciable matter within the general jurisdiction of the circuit court conferred by article VI, section 9, of the Illinois Constitution of 1970. As stated, a "justiciable matter" is "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of the parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335, 770 N.E.2d at 184. Alexus does not argue the circuit court's custody determination was not a justiciable matter. Furthermore, historically, our circuit courts have possessed the inherent power, derived from the common law, to determine child-custody issues. "As early as *Cowles v. Cowles* (1846), 8 Ill. 435, 437[-38], this court upheld a custody decree, not on the basis of jurisdiction conferred by the Divorce Act, but under the 'power of the court of Chancery to interfere with and control, not only the estates but the persons and custody of all minors within the limits of its jurisdiction.' The legislature conferred no new authority or jurisdiction upon the court; '[i]t was by its original jurisdiction clothed with the same powers before.' " *In re M.M.*, 156 Ill. 2d 53, 68, 619 N.E.2d 702, 711 (1993) (quoting *Cowles v. Cowles*, 8 Ill. 435, 437-38 (1846)).

¶ 29 Therefore, we find the Champaign County circuit court possessed subject-matter jurisdiction to enter the February 2010 custody judgment, and the judgment was not void for lack of subject-matter jurisdiction. See *In re Luis R.*, 239 Ill. 2d 295, 301, 941 N.E.2d 136, 140 (2010) ("[T]he *only* consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present." (Emphasis in original.)).

¶ 30 We take this opportunity to address the confusion the legislature's use of the word "jurisdiction" in section 201 of the UCCJEA understandably has produced here, and perhaps in other cases as well. At first blush, the language in section 201 appears to limit the circuit

court's subject-matter jurisdiction in child-custody cases. However, as we have discussed, the legislature may not do so where the circuit court's subject-matter jurisdiction is constitutionally derived. Upon closer examination, and in light of the constitutional discussion above, we conclude section 201 should be read as simply establishing the procedural framework within which a circuit court may properly exercise its subject-matter jurisdiction. Whereas an erroneous application of section 201 by the circuit court will not result in a void order due to a lack of subject-matter jurisdiction, it may result in a *voidable* order. A voidable order is one which is entered erroneously by a court having jurisdiction, both of the parties and the subject matter, and is not subject to collateral attack. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174, 692 N.E.2d 281, 284 (1998) ("Once a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law.").

¶ 31       This interpretation finds support in our supreme court's decisions in *Siegel v. Siegel*, 84 Ill. 2d 212, 417 N.E.2d 1312 (1981), and *Luis R.*, 239 Ill. 2d 295, 941 N.E.2d 136. In *Siegel*, the supreme court examined a predecessor statute to section 201 of the UCCJEA (Ill. Rev. Stat. 1977, ch. 40, ¶ 601), in which the Illinois legislature also appeared to limit the circuit court's subject-matter jurisdiction, using language almost identical to that in section 201. *Siegel*, 84 Ill. 2d at 219-22, 417 N.E.2d at 1315-16. That statute read, in part:

> " 'Sec. 601. Jurisdiction–Commencement of proceeding.
>
> (a) A court of this State competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification judgment if:
>
> (1) this State is the home state of the child at the time of commencement of the proceedings, or had been the child's home state within 6 months before the commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reason and a parent or person acting as parent continues to live in this State; or
>
> (2) it is in the best interest of the child that a court of this State assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this State, and there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships; or
>
> (3) the child is physically present in this State and has been abandoned, or is neglected or dependent, or it is necessary in an emergency to protect him because he has been subject to or threatened with mistreatment or abuse; or
>
> (4) no other state has jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on its determination that this State is the more appropriate forum to determine custody of the child; and it is in the child's best interest that the court assume jurisdiction.' " *Id*. at 220, 417 N.E.2d at 1315 (quoting Ill. Rev. Stat. 1977, ch. 40, ¶ 601).

The *Siegel* court stated, in part:

> "We note, parenthetically, that section 601 speaks in terms of 'jurisdiction' of the subject matter of child-custody determinations. Jurisdiction of the subject matter of such determinations, at least in the traditional sense, is conferred upon our circuit courts by the constitutional provision that 'Circuit courts shall have original

- 8 -

jurisdiction of all justiciable matters \*\*\*.' (Ill. Const. 1970, art. VI, sec. 9.) *We eliminate the possibility of confusion by pointing out that 'jurisdiction' is not being used by the General Assembly in its traditional subject matter sense, but in the sense of a limitation upon the exercise of the existing jurisdiction.* Despite our reservations regarding the statutory language, we believe it will be less confusing if we adhere to it, particularly since the uniform act which is now the law of Illinois speaks in similar terms." (Emphasis added.) *Siegel*, 84 Ill. 2d at 221, 417 N.E.2d at 1316.

¶ 32    In *Luis R.*, the appellate court examined whether the circuit court's subject-matter jurisdiction to hear a juvenile delinquency petition was limited by the legislature's enactment of section 5-120 of the Juvenile Court Act of 1987 (705 ILCS 405/5-120 (West 2008)). *Luis R.*, 239 Ill. 2d at 298-99, 941 N.E.2d at 138-39. Specifically, section 5-120 stated, in relevant part:

> " '*Exclusive jurisdiction.* Proceedings may be instituted under the provisions of this Article concerning any minor who prior to the minor's 17th birthday has violated or attempted to violate \*\*\* any federal or State law or municipal or county ordinance \*\*\*. \*\*\* Except as provided in [certain other sections of the Act], no minor who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State.' " (Emphasis added.) *Id*. at 298, 941 N.E.2d at 138 (quoting 705 ILCS 405/5-120 (West 2008)).

The supreme court in *Luis R.*, noting the legislature's use of the phrase "exclusive jurisdiction," stated as follows:

> "Admittedly, the relevant statutory language is not helpful, as the inclusion of the phrase 'exclusive jurisdiction' in section 5-120's title creates the impression that section 5-120 somehow grants authority to the circuit court to adjudicate juvenile delinquency petitions, *and that the limitations contained within that section are therefore limitations on the circuit court's jurisdiction.* But as we already have seen, once the legislature creates a justiciable matter, the circuit court's authority to adjudicate that matter derives exclusively from the state constitution and therefore cannot be limited by the authorizing statute." (Emphasis added.) *Id*. at 304, 941 N.E.2d at 141-42 (citing *Belleville Toyota*, 199 Ill. 2d at 334-35, 770 N.E.2d at 184-85).

¶ 33    Finally, at oral argument, counsel for Alexus directed this court's attention to *In re Marriage of Diaz*, 363 Ill. App. 3d 1091, 845 N.E.2d 935 (2006), in support of her argument that even after *Belleville Toyota*, the UCCJEA delineates the circuit court's subject-matter jurisdiction in child-custody matters. Notably, in *Diaz*, the parties limited their "jurisdiction" dispute to the procedural confines of the UCCJEA, specifically, whether Illinois was the minor's "home state" as defined by the UCCJEA. *Id*. at 1094, 845 N.E.2d at 938. The appellate court in *Diaz* found the circuit court erred in granting the respondent's motion to dismiss for lack of jurisdiction because, while the minor did not have a "home state," Illinois had jurisdiction based on her significant contacts with the state under section 201(a)(2) of the UCCJEA. *Id*. at 1100, 845 N.E.2d at 943. In support of its decision, the *Diaz* court cited *In re D.S.*, 217 Ill. 2d 306, 840 N.E.2d 1216 (2005).

¶ 34    In *D.S.*, the respondent mother, being afraid that the Department of Children and Family Services would take custody of her unborn child, attempted to drive from Illinois to Tennessee when she went into labor. *Id*. at 309, 840 N.E.2d at 1218. She gave birth in an Indiana hospital. *Id*. Our supreme court analyzed whether the respondent's temporary hospital stay in Indiana was sufficient to confer "home state" jurisdiction under the UCCJEA. *Id*. at 317, 840 N.E.2d at

1222. The court held the short hospital stay was not sufficient to confer "home state" jurisdiction on Indiana, and Illinois had jurisdiction based on significant contacts under section 201(a)(2) of the UCCJEA. *Id*. at 319, 840 N.E.2d at 1223-24.

¶ 35    Our decision here is not at odds with either *D.S.* or *Diaz.* The issue in those cases was not whether Illinois circuit courts possessed subject-matter jurisdiction to hear child-custody cases in the first place, but whether the circuit courts there *properly exercised* their jurisdiction within the procedural framework of the UCCJEA.

¶ 36    In summary, because we find the Champaign County circuit court had subject-matter jurisdiction to hear Joshua's original petition to determine the custody of L.M. in this case, we vacate the court's March 12, 2014, order finding the February 8, 2010, order void and dismissing Joshua's original January 15, 2010, petition with prejudice. Accordingly, we need not determine whether Alexus should otherwise be estopped from attacking the February 2010 order. Further, because the only issue properly before this court concerns whether the circuit court had subject-matter jurisdiction to hear Joshua's original custody petition in 2010, we do not address whether Alexus improperly removed L.M. from the State of Missouri.

¶ 37                                 III. CONCLUSION

¶ 38    For the reasons stated, we vacate the circuit court's March 12, 2014, order finding the February 2010 order void and dismissing Joshua's original January 15, 2010, petition with prejudice.

¶ 39    Order vacated.