NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240122-U

NO. 4-24-0122

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 7, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| ROBERT TAYLOR, | ) | Appeal from the |
|     Petitioner-Appellee, | ) | Circuit Court of |
|     v. | ) | Rock Island County |
| RAVEN BRADFORD, | ) | No. 22FA159 |
|     Respondent-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Richard A. Zimmer, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed in part and reversed in part, concluding the trial court did not err when it denied respondent's motion to transfer venue but abused its discretion when it denied her motion to reconsider its decision ordering her to move back to Illinois.

¶ 2    Respondent, Raven Bradford, appeals from the Rock Island circuit court's judgment denying her motions to (1) transfer the proceedings to Texas and (2) reconsider the court's decision ordering her to move back to Illinois from Texas. Petitioner, Robert Taylor, responds the court properly denied the motions. We affirm in part, reverse in part, and remand for further proceedings.

¶ 3                       I. BACKGROUND

¶ 4              A. Petition to Establish Parenting Time

¶ 5        Taylor and Bradford are the unmarried parents of two children, R.T. (born March 2011) and N.T. (born August 2017). In January 2017, Taylor was charged and later convicted of domestic battery causing bodily harm in Rock Island case No. 17-CM-383, wherein Bradford, while pregnant, was the alleged victim. In October 2018, the State charged Taylor with aggravated domestic battery (strangulation), two counts of domestic battery, and criminal damage to property in Rock Island case No. 18-CF-928, wherein Bradford was again the alleged victim. The same date those charges were filed, Bradford obtained a plenary order of protection against Taylor. In March 2019, Taylor was convicted of aggravated domestic battery (strangulation), a Class 2 felony, and was sentenced to four years in prison.

¶ 6        On March 11, 2022, Taylor was released from prison and began serving a four-year term of mandatory supervised release (MSR). In June 2022, he filed a petition to establish parenting responsibilities and parenting time with respect to R.T. and N.T. A few weeks later, Bradford filed a response, asserting that according to the conditions of Taylor's MSR, he was not to have contact with her or the children. Out of concern for her own safety, as well as the children's, her whereabouts were to remain unknown to Taylor. Bradford asked the trial court to dismiss the petition based on Taylor's legal disability barring him from contact with the children.

¶ 7                                B. Motion to Return to Illinois

¶ 8        In September 2022, Taylor filed a motion requesting Bradford return the children to Illinois. In the motion, Taylor alleged that shortly after receiving notice of his petition, Bradford moved to Texas with R.T. and N.T. without permission of the trial court or notice to him. Taylor claimed Bradford violated section 609.2(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/609.2(c) (West 2022)).

¶ 9 In response, Bradford asserted she had not violated section 609.2(c) of the Act because that section only applies when an order establishing parenting time is already in place and no such order existed in this case. Bradford maintained Taylor's petition should be dismissed based on the terms of his MSR barring him from contact with her or the children.

¶ 10 C. Motion Hearing

¶ 11 On September 23, 2023, the trial court conducted a hearing on Taylor's motion. At the outset, the parties and the court acknowledged their agreement section 609.2(c) of the Act did not apply to the proceedings in this case, but the court nonetheless had the authority to order Bradford back to Illinois if it was in the children's best interest.

¶ 12 1. *Taylor*

¶ 13 Taylor testified he lived in a two-bedroom apartment in Silvis, Illinois, and earned money working full-time in a highway construction training program. Taylor had many supportive family members around the Quad Cities region and throughout the Midwest. Taylor's parents, who were retired, had relationships with the children and saw them occasionally before Bradford moved them to Texas. Taylor had an aunt in Davenport who often assisted him and the children financially. This aunt previously gave Bradford $100,000 towards purchasing a home in Moline and had also purchased a vehicle for her. Taylor regretted his past actions and hoped to be reintroduced to the children so he could reestablish his relationship with them and be present in their lives in the future. While incarcerated, Taylor participated in a substance abuse program for three years, which included three hours of group meetings five days per week, and completed anger management classes. Following his release, Taylor completed additional anger management classes and a parenting class offered through the Rock Island County Council on Addictions (RICCA).

¶ 14        On cross-examination, Taylor agreed he had not provided Bradford direct financial support for the children since being released from prison and beginning employment, noting the no-contact order was in place. When asked about the night leading to his aggravated domestic battery conviction, Taylor denied hitting R.T. because she witnessed him hitting Bradford. Instead, Taylor claimed he "spanked" R.T. because she came downstairs because of the "noise" Bradford was making during the battery.

¶ 15        Taylor denied that his family had discussed purchasing a home for Bradford in Georgia in March 2022. Taylor also denied that when Bradford agreed to accept money from Taylor's family for the home in Moline, it was with the understanding Taylor would remain in Chicago upon his release from prison and not be permitted to travel to the Quad Cities area. He did not know whether any of his family members made Bradford such promises. Taylor further claimed he was sober since being sent to prison but admitted to abusing drugs heavily in the five years before his incarceration. Additionally, he completed four months of inpatient treatment at RICCA, beginning the day he was released from prison.

¶ 16                                                2. *Bradford*

¶ 17        Bradford testified regarding the altercation leading to Taylor's conviction for aggravated domestic battery. That evening, Taylor choked her outside of their home, which R.T. witnessed through the window. Taylor also beat her for several hours in front of N.T. Although Taylor testified he "spanked" R.T. that night because she came downstairs during his altercation with Bradford, Bradford alleged Taylor actually hit R.T. on the lower back because she witnessed Taylor choking Bradford. Bradford feared for the children's safety because Taylor admitted to being high on liquid Xanax and had threatened to kill her. Taylor would often leave her at home alone with the children while he went out to use drugs with his friends. Bradford ultimately decided

to leave Taylor on July 4, 2018. That night, Taylor smoked a bag of methamphetamine and attacked his son from a previous relationship, T.T., by pushing his fingers into T.T.'s eyes while bathing him. After this, Bradford moved to a duplex in Moline with R.T. and N.T., where she lived for one year. She lived in another house in Moline for several years until purchasing the home in Moline with assistance from Taylor's aunt.

¶ 18    Bradford also described moving to Cedar Rapids in 2015 to distance herself and the children from Taylor's involvement in "gang-related things." Additionally, in 2016, Taylor beat her while she was pregnant with N.T. Taylor later pleaded guilty to domestic battery related to that incident. After this, Bradford maintained the relationship with Taylor because he promised to change and began working with a psychologist, as ordered by the court. Bradford believed Taylor had not changed since going to prison and would begin his old behaviors "the moment nobody is watching him." Taylor had never been consistently employed, but instead earned money by selling drugs. Bradford testified that in July 2023, she called Taylor on the phone after hearing from his family members how much he had changed. Within "ten seconds" of the call, Taylor aggressively demanded to know how many times he needed to say sorry. This indicated to Bradford he had not changed.

¶ 19    Bradford testified the children were doing "amazing" in Texas. After the incident in 2018, she and R.T. both engaged in therapy. Although Bradford allowed Taylor's family to visit with the children with the condition they not talk about Taylor during the visits, they often did anyway. R.T. informed Bradford when Taylor's family members talked about him, which Bradford believed led to an "unstable" environment and made the children upset for several days afterwards.

¶ 20    Bradford only accepted the money for the home in Moline on the understanding that (1) Taylor's family would not tell him where she lived and (2) he would live in Chicago for four years following his release from prison. Bradford had always maintained she would not feel safe regarding Taylor moving back to the Quad Cities unless he had demonstrated his prior issues had been resolved. Two days before Taylor's release from prison on March 21, 2022, Bradford was informed he would be returning to the Quad Cities area. Bradford immediately began arranging to leave and traveled to Texas in May 2022, where she applied for and was approved for an apartment. She listed the Moline house for sale prior to going to Texas to look for housing. These events occurred prior to being served with Taylor's petition in this case, but she did not actually move to Texas until afterwards.

¶ 21    Ultimately, Bradford believed that Taylor should not be reintroduced to the children until after completing his term of MSR. She wanted reassurance he had changed before having any contact with the children.

¶ 22    On cross-examination, Bradford admitted that because of the no-contact order, she did not know what Taylor was like since being released from prison. When Bradford was asked why she called Taylor in July 2023 if she feared him, she responded she was trying to alleviate her fears about visiting the area and thought if he was remorseful, she could "let [her] guard down." Additionally, Taylor's family members claimed he had changed and it was "unnatural" for the children to be separated from their father.

¶ 23    Following Bradford's testimony, the parties stipulated to Taylor's criminal history, which included the following convictions: manufacturing and delivery of cannabis (2014), unlawful possession of a blackjack (2015), criminal damage to property (2016), obstruction of justice (2016), domestic battery (2017), and aggravated domestic battery (2018).

¶ 24    The trial court continued the matter to September 28, 2023. At the outset, the court read into the record a portion of a document from the Illinois Department of Corrections Parole Board approving Taylor's request to be allowed contact with R.T. and N.T., as dictated by court order:

> " 'The request was parolee Taylor was released with [Prisoner Review Board (PRB)] orders of substance abuse, outpatient mental health, domestic battery and [Treatment Alternatives for Safe Communities] and has completed all orders successfully. He was also released with PRB order of no contact with [Bradford, R.T. and N.T.] due to an [order of protection] that was recently vacated. Parolee has remained compliant with all parole rules including weekly phone check-ins and making himself available for face-to-face visits. He is currently on level 3 supervision. Parolee is working a full-time job and supporting himself while renting an apartment. 2/29 [*sic*] there were no active [orders of protection].' "

The court clarified that based on the language of this document, it allowed *only* for contact with the children—not Bradford. Accordingly, the no-contact order with Bradford remained in effect.

¶ 25    The trial court found Taylor's testimony was credible and emphasized his participation in various treatment programs, commenting that he went above and beyond what was required of him. The court questioned whether Bradford's fear of Taylor was genuine based on her July 2023 contact with him via phone, stating, "If somebody is truly afraid of somebody, I don't know why you'd reach out and contact him. That does not make any sense to me." Although Bradford testified Taylor's family tried to control her, the court found the opposite to be true:

> "Her packing up and moving is controlling the kids. Her taking the attitude that, well, he can't contact me but I can contact him is a classic example of a person with

a no contact order thinking they get to control and can order the other person away whenever they want, but then when they want to contact them, they can't. She is clearly the controlling one here as the one who's trying to do it."

The court did not believe it would be better to delay reunification with the children until after Taylor completed MSR. Instead, the court found it would be safer for reunification to occur while the no-contact order with Bradford remained in place and while Taylor was under supervision. Ultimately, the court found the best interest of the children would be preserved by contact with both parents. Furthermore, the court determined a meaningful reunification between Taylor and the children could not occur if the children remained in Texas. The court granted Taylor's motion and ordered Bradford to move back to Illinois with the children within 30 days.

¶ 26                     D. Motions to Reconsider and Transfer

¶ 27          On October 12, 2023, Bradford filed motions to (1) reconsider the trial court's ruling ordering her to move back to Illinois and (2) transfer the proceedings to Collin County, Texas. In her motion to reconsider, Bradford argued it was in the best interest of the children that they remain in Texas with her, emphasizing Taylor's history of violence, abuse, and addiction. In the motion to transfer, Bradford asserted the children's principal residence was in Collin County, where they had lived for over a year. Furthermore, evidence related to the children's current living conditions and education was in Collin County. Accordingly, Bradford claimed transfer of the case would serve the interests of justice and the convenience of the parties.

¶ 28          On December 18, 2023, the trial court conducted a hearing on Bradford's motions. Following arguments, the court denied both motions. On January 8, 2024, the court entered a written order stating the same and compelling Bradford to return to Illinois within 45 days. The

order further provided reunification between the children and Taylor must occur upon Bradford's return to Illinois.

¶ 29　　　　　On January 22, 2024, Bradford filed a timely petition for leave to file an interlocutory appeal under Illinois Supreme Court Rules 306(a)(4) and (5) (eff. Oct. 1, 2020), or alternatively, Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). Bradford also filed a motion to stay enforcement of the court's January 8, 2024, order under Illinois Supreme Court Rule 305(b) (eff. Jul. 1, 2017). We note the record does not show whether the trial court has ruled on Bradford's motion to stay. On February 13, 2024, this court allowed Bradford's petition for leave to appeal.

## II. ANALYSIS

¶ 30　　　　　On appeal, Bradford presents two arguments. First, Bradford argues the trial court erred when it denied her motion to transfer venue to Collin County, Texas, because it was uncontested (1) she lawfully moved there with the children and (2) Texas had home state jurisdiction. Second, Bradford challenges the court's denial of her motion to reconsider, asserting the best interest factors weighed in favor of allowing her and the children to remain in Texas.

¶ 31　　　　　Taylor responds the trial court properly denied Bradford's motion to transfer the case to Texas because it was not a more appropriate forum under the factors enumerated in section 207(b) of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) (750 ILCS 36/207(b) (West 2022)). Furthermore, Taylor maintains the court properly denied Bradford's motion to reconsider because there was no evidence the court misapplied the law and no abuse of discretion occurred.

¶ 32　　　　　We affirm in part, reverse in part, and remand for further proceedings.

¶ 33　　　　　　　　　　A. Motion to Transfer Venue

¶ 34    Bradford first argues the trial court erred when it denied her motion to transfer venue to Collin County, Texas. Specifically, Bradford claims, under section 102(7) of UCCJEA (*id.* § 102(7)), Texas was the "home state" in this case. According to Bradford, Illinois lost home state jurisdiction after "the expiration of six months from which the children began living in the state of Texas on a full time basis for nearly two years." Alternatively, Bradford claims, if this court finds Illinois does have home state jurisdiction, the trial court nonetheless erred when it declined to transfer the case to Texas because it was the more convenient forum. Taylor responds Illinois had home state jurisdiction and the court properly denied Bradford's motion based on the factors set forth in section 207(a) of UCCJEA (*id.* § 207(a)).

¶ 35                    1. *Home State Jurisdiction*

¶ 36    We first consider Bradford's claim Texas had home state jurisdiction under section 201(a) of UCCJEA. Section 201(a) of UCCJEA states, in relevant part, as follows:

> "[A] court of this State has jurisdiction to make an initial child-custody determination only if:
>
> (1) this State is the home State of the child on the date of the commencement of the proceeding, or was the home State of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State." *Id.* § 201(a).

Section 102(7) of UCCJEA defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." *Id.* § 102(7). Additionally, "commencement" is defined as "the filing of the first pleading in a proceeding." *Id.* § 102(5).

¶ 37        Although section 201(a) of UCCJEA uses the term "jurisdiction," it is well-established that it is not used in the traditional sense—*i.e.*, "the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). In *McCormick v. Robertson*, 2014 IL App (4th) 140208, ¶ 28, this court explained Illinois trial courts' subject matter jurisdiction in child custody proceedings is derived from their general jurisdiction set forth in article VI, section 9, of the Illinois Constitution of 1970. See Ill. Const. 1970, art. VI, § 9. Accordingly, the jurisdictional requirements for child custody determinations set forth in section 201(a) of UCCJEA do not *confer* jurisdiction, but instead "[establish] the procedural framework within which a circuit court may properly exercise its subject-matter jurisdiction." *McCormick*, 2014 IL App (4th) 140208, ¶ 30. Whether the trial court properly exercised its jurisdiction under section 201(a) of UCCJEA is a matter of statutory interpretation, which this court reviews *de novo*. *In re J.S.*, 2019 IL App (1st) 190059, ¶ 19.

¶ 38        Here, the trial court properly exercised its jurisdiction in conformity with section 201(a) of UCCJEA because Illinois was the children's home state at the commencement of proceedings. Under section 102(5) of UCCJEA, the proceedings in this case commenced on June 3, 2022, when Taylor filed his petition. Per Bradford's testimony, the children had been living in Moline, Illinois, with her from July 2018 to July 2022. Although Bradford testified she signed a lease for an apartment in Texas in May 2022, she did not move to Texas with the children until July 2022. Contrary to Bradford's assertions on appeal, the fact that more than six months have passed since the children moved to Texas *after* the proceedings began does not negate Illinois's home state jurisdiction, which attached at the *commencement* of proceedings. See *id.*; see also *id.* § 201(a). Because the children had resided in Illinois with Bradford for longer than six months

prior to June 3, 2022, the court properly determined Illinois had home state jurisdiction in this case.

¶ 39                                    2. *Section 207(a) Factors*

¶ 40            Bradford alternatively argues that even if Illinois has home state jurisdiction under section 201(a) of UCCJEA, the trial court nonetheless erred when it declined to transfer the case because Collin County, Texas, is the more convenient forum to adjudicate the issues presented in this case. Taylor counters that the court properly denied Bradford's motion because Illinois was the more convenient forum under the factors set forth in section 207(b) of UCCJEA. We agree with Taylor.

¶ 41            "The doctrine of *forum non conveniens* is an equitable doctrine that assumes the existence of more than one forum with jurisdiction over the parties and the subject matter of a case." *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 105 (1990). Applying this doctrine "invokes principles of convenience and fairness in choosing between two or more forums that have jurisdiction." (Internal quotation marks omitted.) *Id.* Section 207(a) of UCCJEA codifies the doctrine in child custody cases, providing, "A court of this State which has jurisdiction under this Act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." *Id.* § 207(a). In turn, section 207(b) of UCCJEA provides the analytical framework for determining whether another state is the more appropriate forum, directing the trial court to consider the following factors:

> "(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) the length of time the child has resided outside this State;

(3) the distance between the court in this State and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation." *Id.* § 207(b).

The court's principal task is to determine which court can most capably act in the best interest of the children. *In re Marriage of Rickett*, 2020 IL App (3d) 180657, ¶ 17. This court reviews a trial court's inconvenient forum decision for an abuse of discretion. *In re Marriage of Horgan*, 366 Ill. App. 3d 180, 185 (2006). An abuse of discretion occurs when the court's decision is arbitrary, unreasonable, or no reasonable person would agree with it. *In re Marriage of Hall*, 278 Ill. App. 3d 782, 785 (1996).

¶ 42 The trial court did not abuse its discretion when it denied Bradford's request to transfer the case to Texas on inconvenient forum grounds. Although the court did not specifically consider the section 207(b) factors, this court may affirm on any basis supported by the record, regardless of the trial court's reasoning. *In re Guardianship Estate of Tatyanna T.*, 2012 IL App (1st) 112957, ¶ 19. Here, the record supports a conclusion the section 207(b) factors could reasonably favor continuing the proceedings in Illinois. First, while there was an extensive and documented history of Taylor's abuse toward Bradford, the no-contact order remained in place,

which would mitigate the risk of future abuse. Additionally, even though the children have resided in Texas for two years, they lived in Illinois for most of their lives, including at least four years immediately prior to the proceedings in this case. Furthermore, Collin County, Texas, is hundreds of miles from Rock Island, Illinois, where many important witnesses, such as Taylor and his family members, resided. Most significantly, the Rock Island circuit court had already established a familiarity with the parties and the facts in this case for months before Bradford requested to transfer the proceedings and demonstrated its ability to adjudicate the issues in this case. Conversely, there had been no attempt to conduct any proceedings in Texas. Specifically, the court reasoned as follows:

> "Bottom line is there was a petition filed here in June—on June 6th of '22. Your client participated in that case. There was no objection to jurisdiction here. There was nothing raised as far as transferring some place else. Everybody agreed and it was going to proceed here. We had multiple statuses here. I remember talking multiple times with the attorneys, waiting to get clarification from the Department of Corrections to see whether or not this was even something that was going to be possible, and so we couldn't move forward until we had that."

In sum, the court's decision was not arbitrary or unreasonable given the record in this case. Accordingly, no abuse of discretion occurred when it denied Bradford's motion to transfer venue.

¶ 43          B. Motion to Reconsider Order to Return to Illinois

¶ 44          Bradford next argues the trial court erred when it denied her motion to reconsider its decision ordering her to return to Illinois with the children. Emphasizing Taylor's history of addiction and domestic abuse, Bradford asserts it was in the best interest of the children to remain in Texas and not to return to Illinois. Taylor responds the court properly denied Bradford's motion

- 14 -

to reconsider because it was in the children's best interest to reestablish a relationship with Taylor, which could not be effectively achieved if they remained in Texas. We agree with Bradford and reverse the portion of the court's temporary order requiring Bradford to return to Illinois.

¶ 45　　　　　Before entering a final order allocating parenting time, a trial court may enter a temporary order allocating parenting time and for the relocation of the children consistent with the best interest of the children. 750 ILCS 5/603.5 (West 2022). Any relocation of the children must be ordered consistent with subsections (c) to (g) of section 609.2 of the Act (*id.* § 609.2(c)-(g)). *Id.* § 603.5(a-5). The language of those subsections presupposes that the parent requesting the relocation of the children is also the parent planning to relocate. See *id.* § 609.2(c)-(g). For instance, subsection (c) requires the parent intending to relocate to provide written notice of the relocation to the other parent, and subsection (d) indicates the information to be provided in the notice. *Id.* § 609.2(c)-(d). However, the circumstances in this case are backward: the parent requesting relocation of the children, *i.e.*, Taylor, is not the same parent who will be relocating, *i.e.*, Bradford. Furthermore, to determine the best interest of the children when allocating parenting time via temporary order, the court is to consider the factors set forth in section 602.7 of the Act. *Id.* § 603.5(a). Those factors include, *inter alia*, the following:

"(1) the wishes of each parent seeking parenting time;

(2) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to parenting time;

(3) the amount of time each parent spent performing caretaking functions with respect to the child in the 24 months preceding the filing of any petition for allocation of parental responsibilities or, if the child is under 2 years of age, since the child's birth;

(4) any prior agreement or course of conduct between the parents relating to caretaking functions with respect to the child;

(5) the interaction and interrelationship of the child with his or her parents and siblings and with any other person who may significantly affect the child's best interests;

(6) the child's adjustment to his or her home, school, and community;

(7) the mental and physical health of all individuals involved;

(8) the child's needs;

(9) the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement;

(10) whether a restriction on parenting time is appropriate;

(11) the physical violence or threat of physical violence by the child's parent directed against the child or other member of the child's household;

(12) the willingness and ability of each parent to place the needs of the child ahead of his or her own needs;

(13) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child;

(14) the occurrence of abuse against the child or other member of the child's household;

* * *

(17) any other factor that the court expressly finds to be relevant." *Id.* § 602.7.

¶ 46 "A trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred." *In re Marriage of Eckert*, 119 Ill. 2d 316, 328 (1988). It is well-established that "[t]he trial court is in the best position to judge the credibility of the witnesses and determine the best interests of the child." *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 24. Additionally, "[w]here the evidence permits multiple inferences, we will accept those inferences that support the trial court's order." *Id.* "Under the manifest weight standard, an appellate court will affirm the trial court's ruling if there is any basis in the record to support the trial court's findings." *Id.*

¶ 47 We conclude the trial court's finding, via temporary order, it was in the best interest of the children for Bradford to move back to Illinois with the children was against the manifest weight of the evidence and represented a manifest injustice to Bradford. First, the language of sections 603.5(a-5) and 609.2(c)-(g) of the Act, which provide for the temporary relocation of children, suggests those sections were not intended to be used in circumstances (such as here) where the parent seeking the relocation of the children is not the same parent to be relocated. See 750 ILCS 5/603.5(a-5), 609.2(c)-(g) (2022). Furthermore, there is no indication the court considered either the section 609.2(g) or 602.7 factors in rendering its decision, other than a general statement that it was considering the best interest of the children. While this court typically presumes the court knows and follows the law (see *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 91), the court in this case never indicated a single factor it considered relevant to the issue of the children's best interest. The court offered no explanation as to why reunification could not be effectively accomplished while the children remained in Texas, stating, "I don't see reunification happening via Zoom." The court did not consider any other option for reunification short of forcing

Bradford, on a temporary basis, to move back to Illinois. Furthermore, the parties agreed there was no court order or statute prohibiting Bradford from moving to Texas with the children in May 2022. Even accepting the court's credibility determinations, which favored Taylor and disfavored Bradford, the record showed Taylor was a recovering addict with multiple convictions for domestic abuse—one of which included strangulation—and had no relationship with the children for four years due to his prison sentence and the no-contact order. Although Taylor's family had assisted Bradford financially in the past, Bradford was the children's primary caretaker since their birth and during Taylor's prison sentence. The court's decision prioritized the children's interest in cultivating a currently nonexistent relationship with Taylor while failing to consider any other factors it was required to consider by statute. Despite the fact the court ordered Taylor's family to financially assist Bradford with moving back to Illinois, this did not account for the significant disruption to Bradford's employment and the children's education and other activities that would occur upon relocation. Moreover, the court did not hear any testimony as to what constitutes reunification therapy or regarding methods that might be available without requiring Bradford to relocate. Requiring such a disruption to Bradford and the children's lives on a *temporary basis* solely to facilitate reunification with a parent who has not been allocated decisionmaking authority and has not even sought traditional parenting time constitutes a manifest injustice and an extreme remedy that is unsupported by the record and not necessary to achieve the goal of reunification. Furthermore, it is inconsistent with the applicable statutes providing for temporary relocation of children under the Act. Accordingly, we conclude the court abused its discretion when it denied Bradford's motion to reconsider its decision ordering her to move back to Illinois with the children on a temporary basis. We therefore vacate the portion of the court's order requiring Bradford to move back to Illinois with the children on a temporary basis and remand with directions for the

- 18 -

court and parties to arrange for reunification therapy that does not require Bradford to move back to Illinois. We express no opinion on whether relocation of Bradford and the children would be in the children's best interest in a final judgment allocating parenting time and responsibilities.

¶ 48                                    III. CONCLUSION

¶ 49            For the reasons stated, we affirm the Rock Island circuit court's judgment denying Bradford's motion to transfer venue to Texas. We reverse the court's denial of Bradford's motion to reconsider and vacate the portion of the court's order requiring Bradford to move back to Illinois with the children. We remand the case with directions to consider options for reunification therapy that do not require Bradford to move back to Illinois.

¶ 50            Affirmed in part and reversed in part; vacated in part and remanded with directions.